[Cite as *State v. Pippen*, 2012-Ohio-4692.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,              :    Case No. 11CA3412
                                        :
    vs.                              :    **Released: September 25, 2012**
                                        :
DANIEL C. PIPPEN,                       :    DECISION AND JUDGMENT
                                        :    ENTRY
    Defendant-Appellant.             :

APPEARANCES:

James H. Banks, Dublin, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Pat Apel, Assistant Scioto County Prosecutor, Portsmouth, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant, Daniel C. Pippen, appeals his conviction in the Scioto County Court of Common Pleas after a jury found him guilty of trafficking in drugs, possession of drugs, possession of criminal tools, possession of marihuana, and conspiracy to traffic in drugs, and additional specifications. Pippen raises five assignments of error, arguing 1) there was insufficient evidence to convict him and his convictions were against the manifest weight of the evidence; 2) the trial court erred in overruling his motion to suppress the evidence; 3) the trial court erred by consolidating the trials, not excluding a lab report, not granting Pippen a

continuance to conduct an independent analysis of the alleged controlled substances, and the court erred by admitting hearsay evidence; 4) the verdict forms do not support his convictions; and 5) the trial court erred in convicting and sentencing him.

{¶2} Having reviewed the record, we have identified another sentencing issue, which we raise sua sponte, related to the trial court's characterization of the sentence imposed in connection with Appellant's status as a major drug offender. Specifically, the trial court incorrectly stated a portion of Pippen's sentence was mandatory, when it was not. Accordingly, we sua sponte notice plain error with regard to this sentencing error and hereby reverse this portion of the sentence and remand the case for proceedings consistent with this opinion.

{¶3} Next, we find there was substantial evidence upon which the jury could have found Pippen was guilty of the charged offenses beyond a reasonable doubt, and his convictions are not against the manifest weight. However, with respect to Pippen's argument that the trial court erred when it entered a judgment of conviction on Count 10, the conspiracy charge, because the trial court merged Count 10 with Counts 1 and 2, Pippen was not actually sentenced on that count and, therefore, no conviction resulted on that count. Thus, we overrule Pippen's fourth assignment of error.

{¶4} Since Pippen failed to demonstrate he had standing to challenge the search of the residence, we conclude that the trial court correctly overruled his motion to suppress the evidence and we overrule his second assignment of error.

{¶5} In his third assignment of error, Pippen did not provide legal support for his contention the trials were improperly consolidated and for his contention the trial court erred in overruling his Crim.R. 29(A) motion, and we decline to address these portions of the assignment of error. Moreover, the trial court did not err in permitting the lab report be admitted into evidence, and it was within the trial court's discretion to deny Pippen's motion to continue the trial date. Finally, the trial court did not err in admitting evidence regarding an anonymous informant and an anonymous note. Thus, we overrule Pippen's third assignment of error.

{¶6} Regarding the verdict forms, we find there were several deficiencies that require us to remand the case to the trial court to either enter a judgment of conviction for the correct level of the offenses or reduce the degree of offenses, and sentence Pippen accordingly. Thus, we affirm Pippen's fourth assignment of error in part, and overrule it in part.

{¶7} Finally, as addressed in the various other assignments of error raised by Pippen, and also sua sponte, we find several sentencing errors by the trial court and therefore, we sustain Pippen's fifth assignment of error, in part.

{¶8} Thus, we affirm in part and reverse in part the trial court's judgment and remand the case for proceedings consistent with this opinion.

FACTS

{¶9} On October 25, 2010, Officer Steve Timberlake was unloading items from his vehicle when an unknown male approached him. The male knew Timberlake by name and told him there were men from Detroit selling drugs out of Katherine Lansing's residence at 616 Sixth Street in Portsmouth, Ohio. The next morning, Timberlake found an anonymous note on his vehicle's windshield, addressed to him, indicating there were "D-boys" at the house on Sixth Street, and illegal activity was occurring at another location in Portsmouth.

{¶10} Timberlake viewed the Scioto County Court of Common Pleas' website and determined Lansing was on probation. Timberlake contacted Nick Ferrara, the court's chief probation officer, and discussed the tip about Lansing. Ferrara noted Lansing's listed address was not on Sixth Street, but she had not been reporting to her probation officer and had an outstanding warrant for her arrest. Ferrara determined the 616 Sixth Street address was incorrect, as the probation department was located on Sixth Street, and 616 would have been an alleyway.

{¶11} As a result of this conversation, Timberlake began checking the police department's records for mention of Lansing. One month earlier, on September

22, 2010, a caller telephoned the police to report a burglary at 518 Sixth Street, Portsmouth, Ohio. The report identified the caller as "Catherine Lansing," the resident.

{¶12} Based upon this new information that placed Lansing at 518 Sixth Street only one month earlier, Ferrara decided it would be prudent to visit the residence and arrest Lansing. Because of Timberlake's tip that there may be as many as five additional persons present, who were allegedly selling drugs, Ferrara requested Timberlake and other officers from the Portsmouth Police Department assist with the home search for safety reasons. Timberlake and two other officers accompanied Ferrara and two probation officers to the residence.

{¶13} Upon arriving at the residence, part of the group went to the front door, while the others covered the rear. One of the probation officers at the front door knocked and announced his presence. The officers heard scuffling inside, but no verbal response, and no one answered the door. The officers at the back then noticed one to two males approaching the second story window in a manner that indicated they were attempting to exit the window. The officers shouted this information to the others at the front of the house. At that point, Ferrara ordered one of the probation officers to breach the door.

{¶14} Law enforcement found Daniel Pippen in the upstairs restroom and Tyrone Dixon, Evan Howard, and Eric Durr in a small upstairs bedroom. The

bedroom had a dresser and a mattress in it, along with a pile of money on the floor. The money totaled $3,090.

{¶15} Probation officers were unable to locate Lansing within the house, but they did find mail addressed to her at the residence, as well as a photo of her on the refrigerator. With evidence the house was Lansing's residence, the officers conducted a search for contraband.

{¶16} Law enforcement found a total of $16,803, 1,824 oxycodone pills, cocaine, heroin, marihuana, and two digital scales. Some of the pills and money were in a sock underneath a cushion on the couch. Other drugs and money were in a plastic Walmart bag by the door to the basement. Most of the marihuana was behind the dresser in the upstairs bedroom. There was additional money under the mattress in the same room. There was even money inside of a woman's shoe. Officers found the digital scales in the kitchen. After the search, Tyrone Dixon attempted to claim all of the contraband as his, but when officers asked him asked what was his, Dixon was unable to identify all of the contraband the officers found.

{¶17} The grand jury indicted Pippen and the others within the house for trafficking in drugs, possession of drugs, trafficking in cocaine, possession of cocaine, possession of criminal tools, possession of marihuana, and conspiracy to traffic in drugs, many of which included aggravating specifications. During the jury trial, the trial court dismissed the counts relating to the cocaine, and the jury

convicted Pippen of the remaining counts and found the money recovered was subject to forfeiture. The verdict forms read:

Count 1: "Trafficking in Drugs/Oxycodone/Vicinity of a School/Major Drug Offender." The jury found the amount equaled or exceeded 100 times the bulk amount and was within 1,000 feet of a school.

Count 2: "Possession of Drugs/Major Drug Offender." The jury found the amount equaled or exceeded 100 times the bulk amount.

Count 3: "Trafficking in Drugs/Heroin/Within the Vicinity of a School." The jury found the amount was equal to or greater than one gram but less than five (5) grams, and was within 1,000 feet of a school.

Count 4: "Possession of Drugs/Heroin." The jury found the amount equaled or exceeded one gram, but was less than five grams.

Count 7: "Trafficking in Drugs/Marijuana/Within the Vicinity of a School." The jury found the amount was less than 200 grams and was within 1,000 feet of a school.

Count 8: "Possession of Criminal Tools." There were no findings associated with this count.

Count 9:     "Possession of Marijuana."  The jury found the amount was less

than the bulk amount.

Count 10:    "Conspiracy to Traffic in Drugs, F2."

{¶18} The trial court sentenced Pippen to 27 years in prison.  Pippen now

appeals.

ASSIGNMENTS OF ERROR

I.      THE EVIDENCE PRESENTED AT TRIAL IS INSUFFICIENT TO

SUPPORT DEFENDANT'S CONVICTION, WHICH

CONVICTION IS MANIFESTLY AGAINST THE WEIGHT OF

THE EVIDENCE AND MUST BE REVERSED.

II.     THE TRIAL COURT ERRED IN DENYING DEFENDANT-

APPELLANT'S MOTION TO SUPPRESS AND RENEWED

MOTION TO SUPPRESS EVIDENCE.

III.    THE TRIAL COURT ERRED IN ITS RULINGS AT TRIAL,

INCLUDING BUT NOT LIMITED TO THE CONSOLIDATION OF

APPELLANT'S CASE WITH THE CO-DEFENDANTS, DENIAL

OF PIPPEN'S 29(A) MOTION AND IN THE ADMISSION OF

EVIDENCE SUCH TO REQUIRE REVERSAL OF DEFENDANT'S

CONVICTIONS.

IV.    THE VERDICT FORMS DO NOT SUPPORT DEFENDANT'S

CONVICTIONS.

V.    THE TRIAL COURT ERRED IN CONVICTING AND

SENTENCING THE DEFENDANT.

LEGAL ANALYSIS

{¶19} After reviewing the record, we have noted an initial threshold matter

that must be addressed related to the trial court's characterization of Pippen's

sentence imposed as a result of his major drug offender specification.  As will be

more fully discussed, infra, when sentencing Pippen, the trial court incorrectly

stated that this portion of Pippen's sentence was mandatory, when it was not.  As

such, we have decided to sua sponte invoke the "plain error" rule. Crim.R. 52(B)

states that although a defendant may have failed to raise a timely objection to an

error affecting a substantial right, courts may notice the error.

{¶20} For a reviewing court to find plain error: 1.) there must be an error, i.e

., "a deviation from a legal rule"; 2.) the error must be plain, i.e., "an 'obvious'

defect in the trial proceedings"; and 3.) the error must have affected "substantial

rights," i.e., it must have affected the outcome of the proceedings. *State v. Barnes*,

94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Furthermore, the Supreme Court of

Ohio has admonished courts that notice of plain error under Crim.R. 52(B) is to be

taken " 'with the utmost caution, under exceptional circumstances and only to

prevent a manifest miscarriage of justice.' " Id., quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶21} When reviewing felony sentences, this Court follows the two-step approach the Supreme Court of Ohio outlined in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 4. See *State v. Welch*, 4th Dist. No. 08CA29, 2009-Ohio-2655, at ¶ 6. "First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, [that is, if the sentence complies with the law,] the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶ 4.

{¶22} Here, the jury convicted Pippen of aggravated trafficking in drugs, with additional aggravating factors that the amount of oxycodone involved was more than 100 times the bulk amount, and the crime occurred within the vicinity of a school. Aggravated trafficking in drugs is proscribed by R.C. 2925.03(C)(1). R.C. 2925.03(C)(1)(f) provided, "[i]f the amount of the drug involved equals or exceeds one hundred times the bulk amount and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, aggravated trafficking in drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the

maximum prison term prescribed for a felony of the first degree and may impose an additional prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code." The jury found the amount of the drug exceeded 100 times the bulk amount.

{¶23} Thus, Pippen was a "major drug offender" under R.C. 2925.03(C)(1)(f) and subject to a mandatory prison term of ten years for aggravated trafficking in drugs. The trial court also sentenced Pippen to an additional prison term of ten years for the major drug offender specification, stating on the record that this additional ten-year term was mandatory.

{¶24} R.C. 2929.14(D)(3)(b) provided, "[t]he court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years * * *."[1] That is, the trial court was permitted to impose an additional prison term of ten years for the major drug offender specification, but the statutory language did not make the additional prison term mandatory. Thus, it was erroneous for the trial court to label the prison term for the major drug offender specification as "mandatory."

{¶25} The distinction between mandatory and nonmandatory prison terms is important when determining whether a court may grant an offender judicial

---

[1] R.C. 2929.14 has since been amended.

release.  R.C. 2929.20(A)(1)(a) provided only eligible offenders could apply for judicial release, and "'eligible offender' means any person serving a stated prison term of ten years or less * * *."  As Pippen's aggregate sentence was 27 years, he was not eligible for judicial release because his aggregate sentence was greater than ten years.

{¶26} However, Revised Code Section 2929.20 has since been amended and Pippen will eventually be eligible for judicial release, even with a prison sentence of 27 years.  The General Assembly amended R.C. 2929.20(A)(1)(a) to read, "Except as provided in division (A)(1)(b) of this section, 'eligible offender' means any person who, on or after April 7, 2009, is serving a stated prison term that includes one or more nonmandatory prison terms."  As 17 years of Pippen's 27-year sentence are nonmandatory, Pippen is an "eligible offender."  Additionally, the newly added R.C. 2929.20(C)(5) provides, "[i]f the aggregated nonmandatory prison term or terms is more than ten years, the eligible offender may file the motion not earlier than the later of the date on which the offender has served one-half of the offender's stated prison term or the date specified in division (C)(4) of this section."

{¶27} Accordingly, because the trial court incorrectly stated the ten-year prison term for Pippen's major drug offender specification was mandatory, we conclude that this portion of the sentence was contrary to law and an abuse of

discretion under *Kalish*, supra, and also constitutes plain error. Accordingly, we hereby reverse this portion of the sentence and remand the case for proceedings consistent with this opinion.

ASSIGNMENT OF ERROR I

A. Standard of Review

{¶28} In his first assignment of error, Pippen argues his convictions were against the manifest weight of the evidence and based upon insufficient evidence. We disagree. Further, with respect to Pippen's claim that he was convicted of conspiracy to traffic in drugs based upon insufficient evidence against the weight of the evidence, because we find Pippen was not actually convicted on the conspiracy count, we reject this argument also.

{¶29} "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Therefore, we first consider whether [Appellant's] conviction [is] against the manifest weight of the evidence." (Internal quotations, citations, and footnote omitted.) *State v. Leslie,* 4th Dist. Nos. 10CA17, 10CA18, 2011-Ohio-2727, at ¶ 15. *See*, *also*, *State v. Bostwick*, 4th Dist. No. 10CA3382, 2011-

Ohio-3671, at ¶ 10; *State v. Kulchar*, 4th Dist. No. 10CA6, 2011-Ohio-5144, at ¶ 31 (per curiam).

{¶30} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown,* 4th Dist. No. 09CA3, 2009-Ohio-5390, at ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  A reviewing court "may not reverse a conviction when there is substantial evidence upon which the [trier of fact] could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), at paragraph two of the syllabus.

{¶31} We must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995), citing *State v. Grant*, 67 Ohio St.3d 465, 620 N.E.2d 50 (1993).  The trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and

use these observations in weighing the credibility of the proffered testimony."

*Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

## B. Legal Analysis

### 1. Trafficking Counts

"(A) No person shall knowingly do any of the following:

* * *

"(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

* * *

"(C) Whoever violates division (A) of this section is guilty of one of the following:

"(1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:

* * *

"(f) If the amount of the drug involved equals or exceeds one hundred times the bulk amount and regardless of whether the offense was committed in the vicinity of a school * * *, aggravated trafficking in drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

* * *

"(3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of trafficking in marihuana. The penalty for the offense shall be determined as follows:

* * *

"(b) Except as otherwise provided in division (C)(3)(c), (d), (e), (f), (g), or (h) of this section, if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in marihuana is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

* * *

"(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this

section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:

* * *

"(b) Except as otherwise provided in division (C)(6)(c), (d), (e), (f), or (g) of this section, if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the fourth degree, and division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender."

### a. Aggravated Trafficking in Drugs[2]

**{¶32}** Here, there was substantial evidence upon which the jury could reasonably conclude the state had proven all elements of aggravated trafficking in drugs beyond a reasonable doubt.

---

[2] We note the names of the offenses used in several of the verdict forms are incorrect, though this did not prejudice Pippen. For example, Count 1 was entitled "Trafficking in Drugs/Oxycodone/Vicinity of a School/Major Drug Offender," but should have been entitled "aggravated trafficking in drugs" and specified the controlled substance involved was oxycodone. See R.C. 2925.03(C)(1). The offenses should have been titled "aggravated trafficking in drugs" and "aggravated possession of drugs" (for the oxycodone), "trafficking in heroin" and "possession of heroin," "trafficking in marijuana" and "possession of marihuana." The statutory scheme of R.C. 2925.03 and 2925.11 provides for separate offenses, each with distinct aggravating factors and penalties, depending upon the controlled substance involved. We caution against the vernacular use of the phrases "trafficking in drugs" and "possession of drugs," as the state and the court did in this case, because these vernacular phrases are actually specific crimes involving specific controlled substances. See R.C. 2925.03(C)(2) and 2925.11(C)(2). Instead, parties should employ the specific statutory name of the offense based upon the controlled substance involved.

{¶33} Timberlake testified about the various controlled substances law enforcement recovered from 518 Sixth Street. Pippen was present in the house when law enforcement recovered these.

{¶34} Megan Snyder, a forensic chemist, testified at great length about the chemical analyses she performed on each substance, identifying whether it was a controlled substance, and noting the amount of each substance. Snyder testified there were 1,824 pills that contained oxycodone (oxycodone hydrochloride). She also testified, based upon the maximum daily dosage of 90 milligrams for oxycodone and oxycodone's "bulk amount" being five times the maximum daily dosage, the pills were 121.6 times the bulk amount of oxycodone.

{¶35} Regarding the proximity of 518 Sixth Street to a school, Melinda Davis testified the residence was within 1000' of a school at which she was the principal.

{¶36} Again, there were digital scales in plain view. There was $3,090 on the floor of the upstairs bedroom. In total, there was $16,803 in cash within the house, though only one of five defendants was ostensibly employed. In addition to the 1,824 oxycodone pills, there was heroin, cocaine, and marihuana recovered from the residence. Given the sheer quantity of the oxycodone recovered, and the other evidence, it was reasonable for the jury to conclude Pippen was involved in preparing for shipment, shipping, transporting, delivering, preparing for

distribution, or distributing the oxycodone.  It was also reasonable for the jury to conclude Pippen intended to sell or resell the oxycodone, or he knew or had reasonable cause to believe another person intended to sell or resell the oxycodone.

{¶37} Although the case against Pippen and his co-defendants is based entirely upon circumstantial evidence, circumstantial evidence is, by itself, a sufficient basis for a conviction.  *Bostwick*, 4th Dist. No. 10CA3382, 2011-Ohio-3671, at ¶ 17, quoting *State v. Smith,* 4th Dist. No. 09CA29, 2010-Ohio-4507, at ¶ 44, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991).

{¶38} Addressing Pippen's' contention that the state failed to prove possession, even constructive possession, we disagree.  Possession may be actual or constructive.  *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989); *State v. Fry,* 4th Dist. No. 03CA26, 2004-Ohio-5747, ¶ 39.  "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.  Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession."  *Fry* at ¶ 39, citing *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus, and *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

{¶39} This court has held that, "[f]or constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'"

*State v. Harrington,* 4th Dist. No. 05CA3038, 2006-Ohio-4388, at ¶ 15, citing

*Hankerson* at 91. Further, "two or more persons may have joint constructive

possession of a particular item." *State v. Cooper,* 3d Dist. No. 9-06-49, 2007-

Ohio-4937, at ¶ 25, citing *State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d

585 (8th Dist. 1993); *State v. Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952

(Sept. 13, 1999). "[T]he crucial issue is not whether the accused had actual

physical contact with the article concerned, but whether the accused was capable of

exercising dominion or control over it." *State v. Reed,* 2d. Dist. No. 2002-CA-30,

2003-Ohio-5413, at ¶ 19.

{¶40} Pippen's' argument is his mere proximity to various controlled

substances does not conclusively establish he possessed them. R.C. 2925.01(K)

provides, "'[p]ossess' or 'possession' means having control over a thing or

substance, but may not be inferred solely from mere access to the thing or

substance through ownership or occupation of the premises upon which the thing

or substance is found." That is, "a defendant's mere presence in an area where

drugs are located does not conclusively establish constructive possession.

However, a defendant's proximity to drugs may constitute some evidence of

constructive possession. Mere presence in the vicinity of illegal drugs, *coupled*

*with another factor or factors probative of dominion or control over the*

*contraband, may establish constructive possession.*" (Internal citations omitted, emphasis added.) *Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952, at *5.

{¶41} In *State v. Harrington*, the defendant's proximity to a quantity of cocaine, coupled with his immediate denial of any wrongdoing and false statements, permitted a jury to infer the defendant knew the cocaine was there. *Harrington* at ¶ 18, 24. We found this evidence sufficient to establish the defendant knew of the cocaine and he had the ability to exercise control over it, demonstrating constructive possession. *Id*. at ¶ 24. We also found the defendant's convictions for possession and trafficking in cocaine were not against the manifest weight of the evidence. *Id*. at ¶ 26.

{¶42} In *State v. New*, 4th Dist. No. 08CA9, 2009-Ohio-2632, the state presented evidence of recorded telephone conversations between the defendant and her boyfriend that indicated she knew there were drugs in the house. During a phone call, the defendant discussed with her boyfriend specific items in the home the police had recovered, such as a coffee can with a false bottom that contained cocaine, a plate with a razor blade that had cocaine residue on it, and pictures of the defendant, her boyfriend, and a third party holding large sums of cash. *New* at ¶ 16, 17. Given the defendant's presence in the house, coupled with her statements about specific items related to controlled substances, she knew where the cocaine

was kept in the residence, and a finding that she constructively possessed the cocaine was not against the manifest weight of the evidence. *Id.* at ¶ 18.

{¶43} Likewise, in *Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952, we found the defendant's proximity to controlled substances in the passenger compartment of a vehicle, coupled with the vast amount of controlled substances and paraphernalia within the vehicle was sufficient to establish constructive possession. Law enforcement recovered cocaine in a bag behind the passenger's seat; a cocaine straw and a plastic container with marihuana residue beside the defendant's seat; a mirror with cocaine residue under the passenger's seat; numerous marihuana roaches and marihuana joints throughout the vehicle, many of which were in the defendant's plain view. *Id.* Thus, the defendant's proximity, coupled with the vast amount of drugs, some of which were in plain view, permitted the jury to find he knowingly possessed the drugs. *Id.*

{¶44} The present case is akin to *Riggs*. "The presence of such a vast amount of drug evidence in the [house] supports an inference that [Pippen] knew about the presence of the drugs and that he, along with his [co-defendants], exercised control over each of the items found." *Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952, at *5, citing *State v. Soto*, 8th Dist. No. 57301, 1990 WL 145651 (Oct. 4, 1990). Here, there were drugs scattered throughout the entire house: 1,824 oxycodone pills, over 100 grams of marihuana, heroin, cocaine, and

traces of codeine and morphine. There were digital scales in plain view in the kitchen. There was over $16,000 cash in a house where four of the five occupants were unemployed. Considering all of this evidence together, the jury could properly infer Pippen knew there were controlled substances in the house and he was capable of exercising dominion or control over them, establishing his constructive possession of the controlled substances. Thus, the jury's findings that Pippen knowingly possessed the various controlled substances were not against the manifest weight of the evidence.

{¶45} Considering the totality of the evidence, there was substantial evidence upon which the jury could reasonably conclude the state had proven all elements of aggravated trafficking in drugs beyond a reasonable doubt. We cannot say the jury clearly lost its way and created a manifest miscarriage of justice. Thus, we affirm Pippen's conviction for aggravated trafficking in drugs.

b. Trafficking in Marihuana

{¶46} Timberlake testified law enforcement had recovered a bag of marihuana, which contained smaller bags of marihuana. There were also small amounts of marihuana in other containers. Snyder testified the chemical analyses revealed the substance was indeed marihuana and there was 113.3 grams of marihuana total. Again, Davis' testimony was the house was within 1,000 feet of a school.

{¶47} No one testified the marihuana was for personal use. Give the quantity of the marihuana, the fact that it was stored in smaller packages, and its presence of marihuana residue on the digital scale, it was reasonable to believe Pippen was trafficking the marihuana.

{¶48} Considering the evidence as a whole, there was substantial evidence upon which the jury could reasonably conclude the state had proven all elements of trafficking in marihuana beyond a reasonable doubt. We cannot say the jury clearly lost its way and created a manifest miscarriage of justice. Thus, we affirm Pippen's conviction for trafficking in marihuana.[3]

### c. Trafficking in Heroin

{¶49} Similarly, Timberlake testified law enforcement had recovered 2.8 grams of heroin from the residence. Snyder confirmed through chemical analysis the substance was heroin. Snyder also testified one of the digital scales had trace amounts of heroin on it. Again, according to Davis, the house was within 1,000 feet of a school.

{¶50} As with the marihuana, no one testified the heroin was for personal use. Given the heroin residue on the digital scale, it was reasonable to believe Pippen was trafficking heroin.

---

[3] The jury's finding that the marihuana was "less than bulk amount" is inconsequential because "less than bulk amount" is not an aggravating factor; in fact the statute does not refer to a bulk amount of marihuana.

{¶51} Considering the totality of the evidence, there was substantial evidence upon which the jury could reasonably conclude the state had proven all elements of trafficking in heroin beyond a reasonable doubt. We cannot say the jury clearly lost its way and created a manifest miscarriage of justice. Thus, we affirm Pippen's conviction for trafficking in heroin.[4]

2. Possession of Controlled Substances

R.C. 2925.11 provides:

"(A) No person shall knowingly obtain, possess, or use a controlled substance.

"* * *

"(C) Whoever violates division (A) of this section is guilty of one of the following:

"* * *

"(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

---

[4] We address the finding that the heroin was "Equal to or greater than bulk amount but less than five (5) times bulk amount," infra.

"(e) If the amount of the drug involved equals or exceeds one hundred times the bulk amount, aggravated possession of drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

"* * *

"(3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:

"(a) Except as otherwise provided in division (C)(3)(b), (c), (d), (e), (f), or (g) of this section, possession of marihuana is a minor misdemeanor."

"* * *

"(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:

"* * *

"(b) If the amount of the drug involved equals or exceeds ten unit doses but is less than fifty unit doses or equals or exceeds one gram but is less than five grams, possession of heroin is a felony of the fourth degree, and division (C) of

section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender."

{¶52} When the jury found Pippen trafficked in the controlled substances (oxycodone, heroin, and marihuana) under R.C. 2925.03(A)(2), it implicitly found he possessed the substances, too. For the same reasons Pippen's convictions for trafficking were not against the manifest weight of the evidence, we find his convictions for possession of the controlled substances are not against the manifest weight of the evidence either. Thus, we affirm Pippen's convictions for aggravated possession of drugs, possession of marihuana, and possession of heroin.[5]

### 3. Possessing Criminal Tools

{¶53} R.C. 2923.24(A) provides, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Whoever violates that section is guilty of possessing criminal tools. R.C. 2923.24(C).

{¶54} As with Pippen's convictions for possession of controlled substances, there was substantial evidence upon which a jury could find Pippen possessed the digital scales found in the kitchen. The fact that the scales had residue from marihuana, heroin, codeine, and morphine on them, coupled with the vast amount

---

[5] Again, we discuss the errors with the verdict forms, infra.

of drugs recovered from the house, permitted the jury to infer Pippen had a purpose

to use the scales criminally: to traffic the controlled substances.  Thus, we affirm

Pippen's conviction for possessing criminal tools.

4. Conspiracy to Traffic in Drugs

R.C. 2923.01 provides:

"(A) No person, with purpose to commit or to promote or facilitate the

commission of * * * a felony drug trafficking, manufacturing, processing, or

possession offense * * * shall do either of the following:

"(1) With another person or persons, plan or aid in planning the commission

of any of the specified offenses;

"(2) Agree with another person or persons that one or more of them will

engage in conduct that facilitates the commission of any of the specified offenses.

"* * *

"(M) As used in this section:

"(1) 'Felony drug trafficking, manufacturing, processing, or possession

offense' means any of the following that is a felony:

"(a) A violation of section 2925.03 * * * of the Revised Code;

"(b) A violation of section 2925.11 of the Revised Code that is not a minor

drug possession offense."

{¶55} R.C. 2923.01(G) provides, "When a person is convicted of committing * * * [a] specific offense, the person shall not be convicted of conspiracy involving the same offense." As such, because Pippen was convicted on the principle trafficking offense, he could not be convicted of conspiracy involving the same offense. Contrary to Pippen's argument that he was convicted of conspiracy to traffic in drugs, based upon the following, we conclude that Pippen was not actually convicted on the conspiracy count.

{¶56} Here, the record reflects that although the jury did return a finding of guilt as to the conspiracy to traffic in drugs count, Count 10, the trial court "ordered that Count 10 merge with Count 1 and Count 2." Thus, despite the jury's finding Pippen guilty on Count 10, the trial court did not impose a sentence for Count 10. "A conviction consists of a finding of guilt and a sentence." *State v. Fields*, 1st Dist. No. C-090648, 2010-Ohio-4114, ¶ 7, citing *State v. Henderson*, 58 Ohio St.2d 171, 177-179, 389 N.E.2d 494 (1979); *State v. Obstaint*, 1st Dist. No. C-060629, 2007-Ohio-2661, ¶ 24; accord *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12. As such, although the jury found Pippen guilty of Count 10, the trial court did not impose a sentence for Count 10 and as a result, Pippen was not convicted of Count 10. Therefore, there is no conspiracy conviction to vacate.

**{¶57}** As to the other counts discussed herein, as we have found Pippen's convictions are not against the manifest weight of the evidence, we find there was also sufficient evidence to convict him of each offense. Accordingly, we overrule Pippen's first assignment of error.

ASSIGNMENT OF ERROR II

A. Standard of Review

**{¶58}** In his second assignment of error, Pippen argues the trial court erred in overruling his motion to suppress evidence. We disagree.

**{¶59}** Preliminarily, "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." Crim.R. 12(F). While the trial court made no explicit factual findings when it denied Pippen's motion to suppress, "[t]he extensive record of the suppression hearing is 'sufficient to allow full review of the suppression issues.'" *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, at ¶ 96, quoting *State v. Waddy*, 63 Ohio St.3d 424, 443, 588 N.E.2d 819 (1992); citing *State v. Brewer*, 48 Ohio St.3d 50, 60, 549 N.E.2d 491 (1990).

**{¶60}** Generally, "'[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.'" *State v. Roberts,* 110

Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶100, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  "Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence."  *State v. Westbrook*, 4th Dist. No. 09CA3277, 2010-Ohio-2692, at ¶16, citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist. 2000).  "Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case."  *Westbrook* at ¶16, citing *Roberts* at ¶100, citing *Burnside* at ¶8.

### B. Legal Analysis

{¶62} After reviewing the record, we conclude that Pippen did not establish he had standing to assert a Fourth Amendment violation.  "The rule followed by courts today with regard to standing is whether the defendant had an expectation of privacy * * * that society is prepared to recognize as reasonable.  The burden is upon the defendant to prove facts sufficient to establish such an expectation."  *State v. Williams*, 73 Ohio St.3d 153, 166, 652 N.E.2d 721 (1995), citing *Rakas v. Illinois*, 439 U.S. 128, 131, 99 S.Ct. 421, 58 L.Ed.2d 387, at fn. 1 (1978) and *State v. Steele*, 2 Ohio App.3d 105, 107, 440 N.E.2d 1353 (8th Dist. 1981).  See, also, *State v. Corbin*, 6th Dist. No. WD-10-013, 2011-Ohio-3491, at ¶ 24.

{¶62} Here, although Pippen argued that he had standing to challenge the search of the residence and the items within it, he provided no evidence or testimony in support of his argument. Pippen did not own the residence or state he lived there. Nor did Pippen establish he was an overnight guest who could invoke the aegis of *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85, and claim he had an expectation of privacy within Lansing's residence. Consequently, Pippen failed to establish he had standing to assert a Fourth Amendment violation and the trial court was right to deny his motion.

{¶63} Accordingly, we overrule Pippen's second assignment of error.

ASSIGNMENT OF ERROR III

A. Consolidation of Defendants, Crim.R. 29(A) Motion

{¶64} Initially, we note a deficiency in Pippen's appellate brief. Pippen's brief, regarding the third assignment of error, does not comply with App.R. 16(A)(7), which provides: "The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." Pippen, however, has cited no authority in support of his arguments that the trial court improperly consolidated

the defendants' trials and wrongly denied his Crim.R. 29(A) motion – not a single statute, case, or treatise.  Nor did Pippen even argue the issue of the Crim.R. 29(A) motion beyond including it in the assignment of error.

{¶65} "'If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out.'" *Thomas v. Harmon,* 4th Dist. No. 08CA17, 2009-Ohio-3299, at ¶ 14, quoting *State v. Carman,* 8th Dist. No. 90512, 2008-Ohio-4368, at ¶ 31.  "'It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal.'" *Catanzarite v. Boswell,* 9th Dist. No. 24184, 2009-Ohio-1211, at ¶ 16, quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (1996).  Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.,* 4th No. 07CA4, 2008-Ohio-2194, at ¶ 12.  *See*, *also*, App.R. 16(A)(7); App.R. 12(A)(2); *Albright v. Albright,* 4th Dist. No. 06CA35, 2007-Ohio-3709, at ¶ 16.  While we sometimes consider deficient assignment of errors in the interest of justice, we find no need to do so here.

## B. Lab Report

{¶66} In his third assignment of error, Pippen argues the trial court denied him the ability to have an independent analysis done on the alleged controlled

substances. Accordingly, Pippen contends the trial court should have excluded the lab reports from the evidence, or alternatively, it should have continued the trial to permit Pippen to have the testing performed.  We disagree with both propositions.

1. Exclusion of Lab Report

a. Standard of Review

{¶67} "The admission of evidence is within the sound discretion of the trial court." *State v. Knauff*, 4th Dist. No. 10CA900, 2011-Ohio-2725, at ¶ 22, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.  "Absent an abuse of that discretion, an appellate court will not disturb a trial court's ruling on the admissibility of evidence." *State v. Blevins*, 4th Dist. No. 10CA3353, 2011-Ohio-3367, at ¶ 31, citing *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985) (per curiam).

{¶68} "'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.)  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  "Under this highly deferential standard of review, we may not simply substitute our judgment for that of the trial court." *Woody v. Woody*, 4th Dist. No. 09CA34, 2010-Ohio-6049, at ¶ 35, citing *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).  "Rather, we are limited to

determining whether considering the totality of the circumstances, the trial court acted unreasonably, arbitrarily or unconscionably." *Id.*, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984), citing *Blakemore*, 5 Ohio St.3d at 218-220.

### b. Legal Analysis

Ohio Revised Code Section 2925.51 provides:

"(A) In any criminal prosecution for a violation of this chapter or Chapter 3719. of the Revised Code, a laboratory report from the bureau of criminal identification and investigation * * * is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance.

"(B) The prosecuting attorney shall serve a copy of the report on the attorney of record for the accused, or on the accused if the accused has no attorney, prior to any proceeding in which the report is to be used against the accused other than at a preliminary hearing or grand jury proceeding where the report may be used without having been previously served upon the accused.

"* * *

"(E) Any person who is accused of a violation of this chapter * * * is entitled, upon written request made to the prosecuting attorney, to have a portion of * * * each of the substances that are, the basis of the alleged violation preserved for the benefit of independent analysis performed by a laboratory analyst employed by

the accused person * * *.  The prosecuting attorney shall provide the accused's

analyst with the sample portion at least fourteen days prior to trial * * *."

{¶69} Nothing in the statute requires the court to exclude BCI&I's report of

the chemical analysis of the substances because Pippen was unable to obtain an

independent analysis prior to trial.  Nor does Pippen cite any law to support this

proposition.  Thus, we overrule this portion of his assignment of error.

## 2. Motion to Continue Trial

### a. Standard of Review

{¶70} "An appellate court must not reverse the denial of a continuance

unless there has been an abuse of discretion."  *State v. Unger*, 67 Ohio St.2d 65,

67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct.

841, 849, 11 L.Ed.2d 921 (1964) and *State v. Bayless*, 48 Ohio St.2d 73, 101, 357

N.E.2d 1035 (1976).  "In evaluating a motion for a continuance, a court should

note, inter alia: the length of the delay requested; whether other continuances have

been requested and received; the inconvenience to litigants, witnesses, opposing

counsel and the court; whether the requested delay is for legitimate reasons or

whether it is dilatory, purposeful, or contrived; whether the defendant contributed

to the circumstance which gives rise to the request for a continuance; and other

relevant factors, depending on the unique facts of each case."  *Unger* at 67-68.

## b. Legal Analysis

{¶71} Here, the state hand-delivered the alleged controlled substances to the bureau of criminal identification and investigation ("BCI&I") on November 4, 2010. BCI&I completed its analysis of the substances on December 30, 2010 and faxed a copy of the report containing its findings to the state on January 4, 2011. The state sent a copy of the report to Pippen's counsel on January 4, 2011.

{¶72} Pippen knew he was charged with a violation of Revised Code Chapter 2925 on November 10, 2010, the date of his arraignment. However, Pippen waited until January 7, 2011, three days before trial, to request the state preserve a portion of the substances for independent analysis and to request a continuance to complete such. Thus, we do not find the trial court's decision to deny Pippen's request for a continuance was error.

{¶73} Looking at the Unger factors, Pippen's request for a continuance did not specify a requested length, but it took BCI&I over 50 days to analyze all of the drugs involved. Presumably, it would take a number of weeks for an independent analyst to complete the same, making Pippen's request for a continuance a lengthy one. However, Pippen's only other requested continuance was to move his arraignment from the morning to the afternoon of the same day, which weights in his favor.

{¶74} Conversely, the inconvenience to the witnesses, court, and opposing counsel would have been rather significant, considering Pippen's trial had been consolidated with his co-defendants' trials. Short of severing Pippen's trial from the others, continuing the matter would have been quite burdensome and possibly would have become complex considering the speedy trial rights of Pippen's co-defendants.

{¶75} Weighing in Pippen's favor though, if the fact that his request for a continuance was legitimate and not dilatory. Once BCI&I's report indicated a portion of the substances were not contraband, Pippen was warranted in requesting an independent analysis of the substances. On the other hand, Pippen could have requested an independent analysis at any point after his arraignment and his delay in doing so contributed to the circumstances that gave rise to his request for a continuance.

{¶76} Considering all of these factors, though some of them weight in Pippen's favor, we cannot say the trial court's decision to deny Pippen's request for a continuance was an abuse of discretion. Thus, we overrule this portion of Pippen's assignment of error.

## C. Timberlake's Testimony

{¶77} Pippen's final contention within this assignment of error is the trial court erred when it permitted Timberlake to testify regarding his conversation with an anonymous informant and the contents of an anonymous note. We disagree.

{¶78} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is not admissible as evidence, unless a specific exception applies. Evid.R. 802.

{¶79} Concerning the conversation with the anonymous informant, Timberlake testified, over Pippen's objection, "It was information about drug activity in the city of Portsmouth." (Tr. at 396.) Timberlake's statement about the general nature of his conversation with the anonymous person was not inadmissible hearsay. There was no specific out-of-court statement offered to prove the truth of the matter asserted. Rather, there was merely Timberlake's testimony describing the general subject matter of the conversation he had with the person, which was not hearsay.

{¶80} Pippen then objected to Timberlake testifying about the content of the anonymous note. The court held a bench conference, and it was agreed Timberlake could not testify as to what the note said. (Tr. at 396-399.) Pippen did not disagree with the outcome of the bench conference. Thus, Timberlake

described the general nature of the note, stating it concerned "drug activity on Sixth Street." (Tr. at 399.) Pippen did not renew or continue his objection based upon Timberlake's description of the note's subject matter, forfeiting his right to complain of the matter upon appeal.

{¶81} Regarding Pippen's argument that even if the evidence should not have been excluded as hearsay, it was unfairly prejudicial, we disagree. Given the additional testimony on the copious amount of drugs recovered from the house, the chemical analyses performed, and the investigation that led to Pippen's arrest and indictment, we cannot say a general statements that an anonymous person and an anonymous note had discussed alleged drug activity in Portsmouth, Ohio was unfairly prejudicial.

{¶82} Accordingly, we overrule Pippen's third assignment of error.

ASSIGNMENT OF ERROR IV

A. Standard of Review

{¶82} In his fourth assignment of error, Pippen argues his convictions should be vacated because they do not contain the degree of the offenses or the statutory sections pertaining to the various crimes. We agree in part.

R.C. 2945.75 provides:

"(A) When the presence of one or more additional elements makes an offense one of more serious degree:

* * *

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

**{¶83}** The Supreme Court of Ohio has adopted a plain reading of this statute. See *State v. Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, at ¶ 14. Moreover, "[a]lthough [an appellant] failed to object to the verdict forms in the trial court, we have previously noted that a defendant's failure to 'raise the inadequacy of the verdict form' does not forfeit this argument on appeal." *New*, 4th Dist. No. 08CA9, 2009-Ohio-2632, at ¶ 24, citing *State v. Huckleberry,* 4th Dist. No. 07CA3142, 2008-Ohio-1007, ¶ 18, citing *Pelfrey* at ¶ 14.

## B. Legal Analysis

**{¶84}** Here, none of the counts listed the degree of the offense, except for Count 10, Conspiracy to Traffic in Drugs. While the majority of the counts did not list the degree of the offense, they did contain specific findings regarding aggravating factors. Thus, those counts comply with R.C. 2945.75(A)(2) and *Pelfrey* and we affirm the trial court's judgment as it pertains to Count 1, Count 3, Count 4, and Count 7.

{¶85} Regarding the remaining counts, Count 2 did not specify the controlled substance involved; Count 8, and Count 9 did not contain the degree of the offense or proper findings regarding aggravating factors. Accordingly, we must sustain Pippen's assignment of error on these counts and remand the case to the trial court to reduce the degree of those offenses.

{¶86} However, as will be explained in more detail, infra, because Counts 2 and 9 were merged with Counts 1 and 7, respectively, we conclude Pippen was not actually convicted on these counts. As such, there are no convictions on Counts 2 and 9 to vacate. Thus, any error related to the verdict forms for Counts 2 and 9 is harmless. Nevertheless, as set forth above, on remand, the trial court is instructed to reduce the degree of offense on Counts 2 and 9.

### 1. Count 2: Possession of Drugs

{¶87} "[T]his Court has ruled that when a jury verdict fails to specify the drug involved, the convictions must be treated as being associated with the least serious drug for possession/trafficking (usually marijuana)." *State v. Jones*, 4th Dist. No. 09CA1, 2010-Ohio-865, at fn. 3, citing *New*, 4th Dist. No. 08CA9, 2009-Ohio-2632, at ¶ 26, fn. 3; *Huckleberry* at ¶ 24.

{¶88} As the verdict form for Count 2 fails to specify the drug possessed, we must treat it as a finding of guilt regarding possession of the least serious drug, marihuana. Since there is no "bulk amount" for marihuana, the finding of that

additional element of "Equal [sic] or exceeds one hundred (100) times bulk amount" is meaningless. See R.C. 2925.01(D)(1) (excluding marihuana from the definition of "bulk amount"); R.C. 29295.11(C)(3) (delineating the penalties for possession of marihuana and enhancing the degree of the offense based upon gram weight, not bulk amount).

{¶89} Consequently, the jury found Pippen guilty of possession of marihuana, which is a minor misdemeanor, not a first degree felony. R.C. 2925.11(C)(3)(a). As such, we sustain Pippen's assignment of error in this regard. However, as indicated above, because Count 2 was merged with Count 1, Pippen was not sentenced on Count 2. "A conviction consists of a finding of guilt and a sentence." *State v. Fields*, supra, at ¶ 7, citing *State v. Henderson*, supra, at 177-179; *State v. Obstaint*, supra, at ¶ 24; accord *State v. Whitfield*, supra, at ¶ 12. Because Pippen was not sentenced on Count 2, there is no conviction on Count 2 to vacate. Thus, any error related to the verdict form is harmless. Nevertheless, because this matter is already being remanded on several other issues, the trial court is instructed to reduce the degree of offense on Count 2 consistent with this opinion.

### 2. Count 8: Possessing Criminal Tools

{¶90} R.C. 2923.24(A) provides, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it

criminally." Whoever violates that section is guilty of possessing criminal tools. R.C. 2923.24(C). Possessing criminal tools is a misdemeanor of the first degree unless the circumstances indicate the item involved was intended for use in the commission of a felony; then possessing criminal tools is a felony of the fifth degree. *Id*.

{¶91} Here, the jury made no finding of the aggravating factor that the scales, the criminal tools, were intended for use in the commission of a felony. Thus, the verdict form was devoid of the level of the offense findings or aggravating factors and constitutes a finding of guilt of the least degree of the offense charged: a first degree misdemeanor. We sustain Pippen's assignment of error in this regard and vacate his conviction for Count 8.

### 3. Count 9: Possession of Marihuana

{¶92} The verdict form for Count 9 stated the jury had found Pippen guilty of "Count 9 Possession of Marijuana," and made the specific finding of "Less than bulk amount." There is, however, no bulk amount for marihuana. See R.C. 2925.01(D)(1) (excluding marihuana from the definition of "bulk amount"). Further, when determining the appropriate penalty for possession of marihuana, R.C. 2925.11(C)(3) refers to the gram weight of the substance involved, not a bulk amount. Thus, the jury's finding that Pippen was guilty of possession of

marihuana constitutes a finding of the least degree of the offense; a minor misdemeanor. As such, we sustain Pippen's assignment of error in this regard. However, as we concluded in our analysis of Count 2, because Count 9 was merged with Count 7, Pippen was not sentenced on Count 9 and thus, there is no conviction to vacate. *Obstaint*, supra, at ¶ 24.

{¶93} In rendering our decision, we are mindful of the recent holding by the Supreme Court of Ohio in *State v. Eafford*, -- N.E.2d --, 2012-Ohio-2224, wherein the Court held that a jury-verdict form finding an accused guilty of possession of drugs "as charged in * * * the indictment" supported a conviction for possession of cocaine, even though the jury-verdict form failed to specify cocaine. While, at first blush, it appears that the reasoning of *Eafford* does not require the specific language that we found lacking, sub judice, upon closer review we find *Eafford* to be factually distinguishable. Specifically, we note that in *Eafford*, the verdict form at issue at least contained the phrase "as charged in the indictment," which in fact specified cocaine. Here, the verdict forms contained no such clause. As such, in the absence of specifying the degree of the offenses, or setting forth the aggravating factors that serve as the basis for enhancing the offenses, we find the verdict forms to be distinguishable from those in *Eafford*, and therefore find the reasoning of that case to be inapplicable herein.

{¶94} Accordingly, we remand the case to the trial court to 1) impose a conviction for the correct level of the offense as to Count 8; 2) to reduce the degree of offenses as to Counts 2 and 9, which were merged with Counts 1 and 7 for purposes of sentencing: and 3) to sentence Pippen accordingly, also taking into consideration that the major drug offender specification does not require an additional mandatory sentence.

## ASSIGNMENT OF ERROR V

{¶95} In his fifth assignment of error, Pippen argues his convictions and sentences are erroneous. First, he contends all of the offenses should merge, as the state failed to prove he engaged in separate conduct for each offense. Second, Pippen believes the sentences the trial court imposed were simply too harsh and the court did not consider the appropriate sentencing factors. As set forth in detail above, and as we will be explained further, infra, we agree in part.

## A. Merger of Allied Offenses

{¶96} When determining whether multiple offenses should have merged under R.C. 2941.25, "[o]ur standard of review is *de novo.*" *State v. Buckta*, 4th Dist. No. 96 CA 3, 1996 WL 668852 (Nov. 12, 1996), * 2. *See*, *also*, *Coleman v. Davis*, 4th Dist. No. 10CA5, 2011-Ohio-506, at ¶ 16 ("We review questions of law de novo."), quoting *State v. Elkins,* 4th Dist. No. 07CA1, 2008-Ohio-674, at ¶ 12,

quoting *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, at ¶ 23.

R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶97} As the Supreme Court explained in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, under R.C. 2941.25, "the court must determine prior to sentencing whether the offenses were committed by the same conduct." *Johnson* at ¶ 47. The initial question is whether it is possible to commit the two offenses with the same conduct. *Johnson* at ¶ 48. If so, we must then look to the facts of the case and determine whether the two offenses actually were committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-

Ohio-4569, 895 N.E.2d 149, at ¶ 50. "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50.

{¶98} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Johnson* at ¶ 51.

{¶99} Here, Pippen's various crimes relating to different controlled substances are of dissimilar import and do no not merge. *State v. Jones*, 18 Ohio St.3d 116, 480 N.E.2d 408 (1985), discussed the issue of whether a defendant could be convicted of multiple counts of aggravated vehicular homicide resulting from a single collision. The relevant inquiry is "whether the legislature intended the relevant statute[s] to authorize multiple convictions." *Jones* at 117. Having reviewed the legislative intent of R.C. 2925.11, "[t]he Supreme Court of Ohio has held that the simultaneous possession of different types of controlled substances can constitute multiple offenses under R.C. 2925.11." *State v. Westbrook*, 4th Dist. No. 09CA3277, 2010-Ohio-2692, at ¶ 42, citing *State Delfino*, 22 Ohio St.3d 270, 490 N.E.2d 884 (1986), at syllabus. The same holds true for trafficking in multiple controlled substances. *Westbrook* at ¶ 46.

{¶100} Here, Pippen's convictions for trafficking in oxycodone, heroin, and marihuana do not merge with one another. Likewise, Pippen's convictions for possession of controlled substances do not merge with one another. The import of each offense is dissimilar and does not merge under R.C. 2941.25(A). See R.C. 2941.25(B). Accordingly, we overrule this portion of Pippen's fifth assignment of error.

## B. Sentencing

{¶101} First, Pippen's contention that the trial court erred by failing to consider R.C. 2929.14(B) is meritless. The Supreme Court of Ohio held in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, portions of Ohio's sentencing statutes were unconstitutional to the extent they required judicial fact-finding the imposition of sentences above the minimum term. R.C. 2929.14(B) was one of the offending portions. We decline to remand the case to the trial court to consider an unconstitutional portion of a statute.

{¶102} However, we find that Pippen's argument that his sentence was contrary to law is meritorious. As already set forth above, when reviewing felony sentences, this Court follows the two-step approach the Supreme Court of Ohio outlined in *State v. Kalish*, supra, at ¶ 4, which requires us to first determine whether the sentence is contrary to law, and if it is not, we then proceed to the question of whether the sentence was an abuse of discretion. Here, however, we

have already determined that several of Appellant's sentences were contrary to law.

{¶103} Specifically, we sua sponte raised an issue related to the trial court's imposition of a "mandatory" additional sentence on Count 1's major drug offender specification. Having found that the ten year sentence imposed by the trial court was not mandatory, we found this portion of Appellant's sentence to be contrary to law. Additionally, after finding problems with the verdict form for Count 8, we vacated and remanded Pippen's conviction on this count, with instructions to the trial court to reduce the degree of offense from a fifth degree felony to a first degree misdemeanor. Pippen was sentenced to a twelve month prison term on this count, which is clearly outside the range for a first degree misdemeanor, and thus, is contrary to law.

{¶104} Further, although we also found problems with the verdict forms related to Counts 2 and 9, because these counts were merged with Counts 1 and 7, respectively, Pippen was not actually sentenced on these counts and thus the errors did not affect the length of his sentences, either individually or overall. The same is true with respect to the jury's finding of guilt on the conspiracy charge. Not only could Pippen not be convicted of both the principle offense and conspiracy to commit the principle offense, in light of our conclusion that the conspiracy count

was merged with Counts 1 and 2 for purposes of sentencing, this error did not affect the length of his sentences, either individually or overall.

{¶105} Thus, having found these particular sentences to be contrary to law, we find they were also an abuse of discretion. However, as set forth above, we have already affirmed Appellant's convictions on Counts 1, 3, 4, and 7, and we find no error in sentencing related to these counts, with the exception of Count 1's major drug offender specification sentence, which we have already discussed.

{¶106} Accordingly we sustain Pippen's fifth assignment of error, in part.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.**

Kline, J., dissenting, in part.

{¶107} I concur in judgment only with the following exceptions. First, I would not vacate Count 8. Here, the trial court instructed the jury as follows: "Before you can find the individual Defendant[] * * * guilty, you must find beyond a reasonable doubt that * * * the individual Defendant * * * had under his control a device or instrument, to wit, digital scales, with *purpose to use it criminally for the commission of a felony.*" (Emphasis added.) Transcript at 923. Therefore, based on the presumption that the jury followed the trial court's instruction, I would not recognize plain error as to Count 8. *See State v. Eafford*, 132 Ohio St.3d 159,

2012-Ohio-2224, 970 N.E.2d 891, ¶¶ 11, 17. Furthermore, I believe that Counts 2 and 9 are moot. Therefore, I would not address these counts.

{¶108} Accordingly, I respectfully dissent as to Counts 2, 8, and 9. I respectfully concur in judgment only with the rest of the opinion.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, & CAUSE REMANDED and that the Appellee and Appellant split costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J.: Concurs in Judgment and Opinion.
Kline, J.: Dissents in Part with Opinion as to A/E's 2, 8, & 9 and with the remainder of Opinion Concurs in Judgment Only

                    For the Court,

            BY:    _____
                    Matthew W. McFarland, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**