{¶ 1} Defendant-appellant Evans Obsaint was convicted of aggravated robbery with specifications after a trial to the bench. We affirm.
 {¶ 2} Obsaint entered a PNC bank and handed a teller a note that read, "Read silently. If you look at me again, I'll shoot. If you activate an alarm, my time piece will vibrate and I'll shoot you first, trust me. Quickly remove any dye packs and give me all the money. Hand me back that letter, smile, say thank you and walk to the employee's bathroom. Don't turn around. Don't try me or you'll be sorry forever."
 {¶ 3} The teller did not see him make any movements to indicate that he was holding or reaching for a weapon, but believed that he had a gun and complied. Obsaint left the bank with money and a GPS tracking device that had been included with the currency. The police located and arrested him a short time later when the GPS device was traced to Obsaint's car. Obsaint made a full confession, but denied actually having a gun. He consented to a search of his apartment. Sheriffs deputies found the clothing he wore during the robbery and the note he had given to the teller. No gun was located.
 {¶ 4} Obsaint was indicted for one count of aggravated robbery in violation of R.C. 2911.01(A)(1), with two gun specifications, and one count of robbery in violation of R.C. 2911.02(A)(2). On the day that the case was set for trial, Obsaint executed a written waiver of a jury trial. The trial court then engaged Obsaint in the following colloquy: *Page 3 
 {¶ 5} "THE COURT: I understand that Mr. Obsaint wishes to withdraw his request for a jury trial; is that correct, Mr. Obsaint?
 {¶ 6} "MS. RABANUS: We have just signed the waiver saying we didn't want to try a jury trial.
 {¶ 7} "THE COURT: All right. You want to have your case tried by the Court?
 {¶ 8} "THE DEFENDANT: Yes, ma'am.
 {¶ 9} "THE COURT: All right. I'll accept the jury waiver, proceed to trial.
 {¶ 10} The case proceeded to trial with the bank teller and a deputy testifying. The questioning by counsel for Obsaint centered on the issue whether there was any evidence, other than the note, that Obsaint had a gun. At the conclusion of the state's case, the trial was adjourned until the next day. In the interim, both sides submitted written argument on whether the note standing alone was enough to establish the use of a firearm for purposes of the aggravating element of robbery and the gun specifications.
 {¶ 11} When the case resumed, Obsaint moved for an acquittal pursuant to Crim.R. 29, arguing that the note was not enough to establish that he had possessed a handgun. The trial court denied the motion, and the parties rested. In closing argument, Obsaint again argued that the note was insufficient. The trial court again disagreed and found Obsaint guilty on all charges and specifications.
 The Admission to Having a Gun was Enough {¶ 12} Obsaint argues, as he did before the trial court, that the note he wrote indicating that he had a gun was not enough to support his conviction for aggravated robbery and was not enough to support the gun specifications. Accordingly, he *Page 4 
claims in three assignments of error that (1) his convictions were supported by insufficient evidence; (2) his Crim.R. 29 motion was improperly denied; and (3) his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 13} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.[1] The standard of review for the denial of a Crim.R. 29(A) motion to acquit is the same.[2] In a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3]
 {¶ 14} The basis for Obsaint's argument is the decision of this court in State v. Phillips.[4] In that case, the defendant robbed a bank by placing his hand in a paper bag, informing the teller that he had a pistol, and telling her that he would shoot her. Based on those facts, this court held that "the lay testimony concerning the threatened shootings was, without more, legally insufficient to warrant convictions on the gun specifications."[5]
 {¶ 15} Six years later, this court again addressed the issue. InState v. Green,[6] the defendant robbed a bank by placing his hand in a large paper envelope and telling the teller that "this is a stickup, and if you press any buttons I'll blow your brains out." Based on those facts, and without reference to the Phillips decision, we *Page 5 
affirmed the conviction, holding that there was enough evidence for a jury to conclude that the defendant had a gun.[7]
 {¶ 16} In 2001, this court again returned to the issue in State v.Jeffers.[8] In that case, the defendant robbed a United Dairy Farmers convenience store by keeping his hand in his pocket and telling the clerk that he would "blow [her] head off" if she did not comply. CitingGreen, we held that there was sufficient evidence to support the gun specifications.[9]
 {¶ 17} While these cases each involved a defendant whose claim to possess a gun was accompanied by an overt act, there was nothing in the acts themselves that made them necessary to our decisions. Further, the facts in this case demonstrate why requiring an overt act would be inappropriate. Obsaint's note specifically instructed the bank teller not to look at him. Since the record indicates that she did as the note demanded, she did not have the opportunity to see if Obsaint was doing anything to confirm that he was armed. Under such circumstances, the absence of an overt act goes more to the weight rather than to the sufficiency of the evidence.
 {¶ 18} To establish the gun specifications in this case and the aggravating element of robbery, the state had to show that Obsaint had possessed a "firearm."[10] The Revised Code requires that the "firearm" be operable.[11] This court has repeatedly held that the state can make that showing by circumstantial evidence.[12] We reject Obsaint's invitation to require an independent, overt act to support his conviction. *Page 6 
 {¶ 19} We hold that Obsaint's own written admission that he had a gun, in a note that made repeated references to shooting the teller, was sufficient circumstantial evidence to show that he possessed an operable firearm at the time that he committed the robbery. To the extent that our previous decision in Phillips was not overruled by Green andJeffers, it is overruled today.
 {¶ 20} In essence, the trial of this case was about resolving conflicting evidence. In the note that Obsaint gave to the teller, he told her that he had a gun. In his statement to the police, he said he did not. As with any such case, it was left to the trier of fact to resolve this conflict.
 {¶ 21} The Second Appellate District has recently reached the same conclusion. In State v. Greathouse,[13] the defendant pushed the victim into her car and told her not to look at him. He told her that he had a gun and that he would kill her and dump her body if she did not comply. He then raped her. Concluding that the gun specification was supported by sufficient evidence, the court cited our decision inJeffers and held that "even though S.F. never saw the gun, the circumstantial evidence, including representations made by Greathouse, was sufficient to prove the firearm specification."[14]
 {¶ 22} We recognize the danger of confusion about this issue. Holding as we do today that possession of an operable firearm can be established though circumstantial evidence is not the same as holding that possessing a firearm and claiming to possess a firearm are legally interchangeable. We refuse to accept the position of the state that "[a] defendant may be guilty of a gun specification even if they [sic] do not possess a gun. Simply making the victim believe that they [sic] have *Page 7 
a gun through words or actions is enough." The state must still convince a factfinder that the defendant actually possessed a firearm and that it was operable.
 {¶ 23} This case is the perfect example of that principle. Obsaint's trial counsel presented a reasonable argument that, since Obsaint had been truthful about every other aspect of the offense when he confessed to the deputies, he was also being truthful when he told them that he did not have a gun at the time. Had the factfinder believed this to be true, the most he could have been convicted of was robbery.
 {¶ 24} On this point, we note Obsaint's argument with respect to the robbery charge that, under these facts, the most that he could be "convicted" of was theft. We disagree. Obsaint was found guilty of aggravated robbery and robbery. However, the robbery count was merged into the aggravated robbery count for purposes of sentencing. InState v. Henderson,[15] the court defined a conviction as the combined occurrence of a finding of guilty and the imposition of a sentence. In this case, there was more than one finding of guilt, but there was only one conviction involving the imposition of a sentence within the meaning of Henderson. Therefore, Obsaint was not convicted of robbery and any error involved in finding him guilty on the second count was harmless as a matter of law.
 {¶ 25} However, we also reject the argument that he could not have been found guilty of robbery. Obsaint argues that the threat made against the teller was not for the "immediate use of force." This argument fails for two reasons. First, the record belies the argument. Obsaint's note indicated that he would use immediate, deadly force if she did not comply. Second, Obsaint was found guilty of robbery *Page 8 
under R.C. 2911.02(A)(2), which requires only that the defendant "threaten to inflict physical harm on another." Robbery under R.C.2911.02(A)(3) requires the defendant to "threaten the immediate use of force," but Obsaint was not charged with that offense.
 {¶ 26} Since the note that Obsaint presented to the bank teller indicated at two separate points that he would shoot her if she did not comply with his demands, the state presented sufficient evidence to establish that he had an operable firearm at the time that he robbed the PNC bank. Therefore, the trial court properly overruled Obsaint's motion for an acquittal pursuant to Crim.R. 29. Furthermore, his convictions were supported by sufficient evidence and were not against the weight of the evidence. Obsaint's first three assignments of error are overruled.
 Obsaint Properly Waived a Jury Trial {¶ 27} In his fourth assignment of error, Obsaint argues that the trial court lacked jurisdiction to hear the case because his "waiver of a trial by jury was not appropriately made." We disagree.
 {¶ 28} This court addressed this issue in State v. Lomax, a case now pending before the Ohio Supreme Court.[16] In Lomax, we held that "the defendant in a felony case, in addition to signing the required written waiver, must orally acknowledge that he understands that he is waiving his right to a jury trial."[17] According to the record, the trial court did not speak to the defendant at all, and the only mention of the waiver was the trial court's statement that "[s]ince there's going to be a jury waiver, does the state care to make an opening statement at this time?" *Page 9 
 {¶ 29} Holding this to be an insufficient demonstration that the waiver was made "in open court," this court relied on the Ohio Supreme Court's decision in State v. Jells.[18] The trial court inJells asked the defendant three questions concerning whether he had signed the waiver form, whether he had acted of his own free will, and whether anyone had forced him to waive his rights.[19] TheJells court noted that "[t]here is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial * * *. While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so."[20]
 {¶ 30} Obsaint argues that our decision in Lomax mandates that a trial court ask the three questions used by the trial court in Jells before it may accept a jury waiver. While we reaffirm our holding that the trial court must engage the defendant on the record in open court and that the defendant must "orally acknowledge that he is waiving his right to a jury trial,"[21] we decline to dictate how trial courts conduct the required colloquy. As the Eighth Appellate District has noted, "[a]bsent specific requirements like those listed in Crim.R. 11, the manner in which the court determines the validity of a waiver is quite flexible."[22]
 {¶ 31} In this case, the trial court engaged both Obsaint and his counsel in a colloquy, confirming that Obsaint had executed a waiver and that he wished to have his case tried to the bench. This exchange, while limited, was sufficient to demonstrate that Obsaint understood and acknowledged that he was waiving his right to a jury trial. *Page 10 
 {¶ 32} Further, on the record overall, it is abundantly clear that the waiver was knowing, intelligent and voluntary. It is obvious that Obsaint knew exactly what he was doing when he chose to try this case to the bench. Obsaint had never contended that he was not the man who had walked into the PNC bank, handed the teller the note, and walked out with the bank's money. He never argued that he did not write the note. He never disputed that the note indicated that he had a gun and that he would have used it if the teller did not comply.
 {¶ 33} The only issue in this case was purely a legal one — whether the note was sufficient to prove possession of an operable firearm. As counsel indicated in closing argument, "[f]rom the beginning I believe the Court's been aware that this has solely been a legal argument on the defendant's part that he never had a gun." During the sentencing hearing, counsel again indicated that "from the time we stated it has not been an issue of fighting this case * * *. The reason we did the bench trial was simply to fight the gun specification. It was not a matter of disputing the fact that the robbery occurred. That's why we did the bench trial, and did the memorandum regarding the gun specification."
 {¶ 34} The uncontested nature of the majority of the facts in this case, counsel's statements to the trial court during closing argument and sentencing, the briefing on the only issue truly in contention, the execution of the written jury waiver, and the brief colloquy between the trial court and Obsaint lead us inexorably to the conclusion that waiving the right to a jury trial was a sound tactical decision and was done in a knowing, voluntary, and intelligent manner. Requiring the trial court to ask specific questions would not have changed anything in this case, and a rule requiring such questions would do nothing more that elevate form over *Page 11 
substance. If the record demonstrates that the waiver is knowing, voluntary, and intelligent, and if the trial court engages the defendant in a colloquy that establishes that he understands and acknowledges what he is doing, that is enough. Obsaint's fourth assignment of error is overruled.
 {¶ 35} The judgment of the trial court is affirmed.
Judgment affirmed.
HILDEBRANDT, P.J., and SUNDERMANN, J., concur.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[3] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[4] (1990), 69 Ohio App.3d 379, 590 N.E.2d 1281.
[5] Id. at 382-383.
[6] (1996), 117 Ohio App.3d 644, 691 N.E.2d 316.
[7] Id. at 652.
[8] State v. Jeffers (2001), 143 Ohio App.3d 91, 757 N.E.2d 417.
[9] Id. at 95.
[10] See R.C. 2941.141, 2941.145, and 2911.01(A)(1).
[11] See R.C. 2923.11(B) (defining a "firearm" as "a deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant").
[12] See Jeffers at 95 and cases cited therein.
[13] 2nd Dist. No. 21536, 2007-Ohio-2136.
[14] Id. at ¶ 20.
[15] (1979), 58 Ohio St.2d 171, 389 N.E.2d 494.
[16] 166 Ohio App.3d 555, 2006-Ohio-1373, 852 N.E.2d 205, discretionary appeal allowed, 110 Ohio St.3d 1438, 2006-Ohio-3862,852 N.E.2d 187.
[17] Id. at ¶ 1.
[18] (1990), 53 Ohio St.3d 22, 559 N.E.2d 464.
[19] See id. at 25-26.
[20] Id. at 26.
[21] Lomax at ¶ 1.
[22] State v. Davis, 8th Dist. No. 85152, 2005-Ohio-2630, ¶ 6. *Page 1