[Cite as *State v. Howard*, 2012-Ohio-4690.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :
                                        :
        Plaintiff-Appellee,             :   Case No. 11CA3415
                                        :
    vs.                                 :   **Released: September 25, 2012**
                                        :
EVAN J. HOWARD,                         :   DECISION AND JUDGMENT
                                        :   ENTRY
        Defendant-Appellant.            :

APPEARANCES:

Michael H. Siewert, Siewert and Gjostein, Co. LPA, Columbus, Ohio, for
Appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Pat Apel, Assistant Scioto County
Prosecutor, Portsmouth, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant, Evan Howard, appeals his conviction in the Scioto County

Court of Common Pleas after a jury found him guilty of trafficking in drugs,

possession of drugs, possession of criminal tools, possession of marihuana, and

conspiracy to traffic in drugs. Appellant raises four assignments of error, arguing

1) trial counsel was ineffective for failing to object to the jury pool and request it

be supplemented with additional persons; 2) the trial court erred by not

supplementing the jury pool; 3) the trial court erred in denying Appellant's motion

to suppress evidence; 4) there was insufficient evidence to convict Appellant; 5)

the trial court committed plain error when it failed to provide the jury with verdict forms in compliance with R.C. 2945.75, and entered enhanced convictions against Appellant for possession of drugs, trafficking in drugs, and conspiracy to traffic in drugs; and 6) the trial court committed plain error in entering judgments of guilty against Appellant and sentencing him as to counts 1, 2, 3, 4, 7, and 10, claiming that the verdicts were supported by sufficient evidence to establish his guilt beyond a reasonable doubt.

{¶2} Having reviewed the record, we have identified another sentencing issue, which we raise sua sponte, related to the trial court's characterization of the sentence imposed in connection with Appellant's status as a major drug offender. Specifically, the trial court incorrectly stated a portion of Appellant's sentence was mandatory, when it was not. Accordingly, we sua sponte notice plain error with regard to this sentencing error and hereby reverse this portion of the sentence and remand the case for proceedings consistent with this opinion.

{¶3} Next, with respect to Appellant's first assignment of error, we find Appellant failed to demonstrate the alleged ineffective assistance of counsel prejudiced him. Likewise, we find it was not error for the trial court to refuse to supplement its jury list with licensed drivers. Thus, we overrule Appellant's first and second assignment of error.

{¶4} Since Appellant failed to demonstrate he had standing to challenge the search of the residence, we conclude that the trial court correctly overruled his motion to suppress the evidence and we overrule his third assignment of error.

{¶5} Next, we find there was sufficient evidence upon which the jury could have found Appellant was guilty of the charged offenses beyond a reasonable doubt. However, with respect to Appellant's argument that the trial court erred when it entered a judgment of conviction on count 10, the conspiracy charge, because the trial court merged count 10 with counts 1 and 2, Appellant was not actually sentenced on that count and, therefore, no conviction resulted on that count. Thus, we overrule Appellant's fourth assignment of error.

{¶6} Finally, regarding the verdict forms, we find there were several deficiencies that require us to remand the case to the trial court to enter a judgment of conviction for the correct level of the offenses and sentence Appellant accordingly. Thus, we affirm Appellant's fifth (supplemental) assignment of error in part, and overrule it in part. Finally, as Appellant's sixth assignment of error raises issues already disposed of under Appellant's fifth assignment of error, we need not address it.

{¶7} Therefore, we affirm in part and reverse in part the trial court's judgment and remand the case for proceedings consistent with this opinion.

FACTS

{¶8} On October 25, 2010, Officer Steve Timberlake was unloading items from his vehicle when an unknown male approached him.  The male knew Timberlake by name and told him there were men from Detroit selling drugs out of Katherine Lansing's residence at 616 Sixth Street in Portsmouth, Ohio.  The next morning, Timberlake found an anonymous note on his vehicle's windshield, addressed to him, indicating there were "D-boys" at the house on Sixth Street, and illegal activity was occurring at another location in Portsmouth.

{¶9} Timberlake viewed the Scioto County Court of Common Pleas' website and determined Lansing was on probation.  Timberlake contacted Nick Ferrara, the court's chief probation officer, and discussed the tip about Lansing.  Ferrara noted Lansing's listed address was not on Sixth Street, but she had not been reporting to her probation officer and had an outstanding warrant for her arrest.  Ferrara determined the 616 Sixth Street address was incorrect, as the probation department was located on Sixth Street, and 616 would have been an alleyway.

{¶10} As a result of this conversation, Timberlake began checking the police department's records for mention of Lansing.  One month earlier, on September 22, 2010, a caller telephoned the police to report a burglary at 518 Sixth Street,

Portsmouth, Ohio. The report identified the caller as "Catherine Lansing," the resident.

{¶11} Based upon this new information that placed Lansing at 518 Sixth Street only one month earlier, Ferrara decided it would be prudent to visit the residence and arrest Lansing. Because of Timberlake's tip that there may be as many as five additional persons present, who were allegedly selling drugs, Ferrara requested Timberlake and other officers from the Portsmouth Police Department assist with the home search for safety reasons. Timberlake and two other officers accompanied Ferrara and two probation officers to the residence.

{¶12} Upon arriving at the residence, part of the group went to the front door, while the others covered the rear. One of the probation officers at the front door knocked and announced his presence. The officers heard scuffling inside, but no verbal response, and no one answered the door. The officers at the back then noticed one to two males approaching the second story window in a manner that indicated they were attempting to exit the window. The officers shouted this information to the others at the front of the house. At that point, Ferrara ordered one of the probation officers to breach the door.

{¶13} Law enforcement found Daniel Pippen in the upstairs restroom and Tyrone Dixon, Evan Howard, and Eric Durr in a small upstairs bedroom. The

bedroom had a dresser and a mattress in it, along with a pile of money on the floor. The money totaled $3,090.00.

{¶14} Probation officers were unable to locate Lansing within the house, but they did find mail addressed to her at the residence, as well as a photo of her on the refrigerator. With evidence the house was Lansing's residence, the officers conducted a search for contraband.

{¶15} Law enforcement found a total of $16,803.00, 1,824 oxycodone pills, cocaine, heroin, marihuana, and two digital scales. Some of the pills and money were in a sock underneath a cushion on the couch. Other drugs and money were in a plastic Walmart bag by the door to the basement. Most of the marihuana was behind the dresser in the upstairs bedroom. There was additional money under the mattress in the same room. There was even money inside of a woman's shoe. Officers found the digital scales in the kitchen. After the search, Tyrone Dixon attempted to claim all of the contraband as his, but when officers asked him what was his, Dixon was unable to identify all of the contraband the officers found.

{¶16} The grand jury indicted Appellant and the others within the house for trafficking in drugs, possession of drugs, trafficking in cocaine, possession of cocaine, possession of criminal tools, possession of marihuana, and conspiracy to traffic in drugs, many of which included aggravating specifications. During the jury trial, the trial court dismissed the counts relating to the cocaine, and the jury

convicted Appellant of the remaining counts and found the money recovered was subject to forfeiture. The verdict forms read:

Count 1:    "Trafficking in Drugs/Oxycodone/Vicinity of a School/Major Drug Offender." The jury found the amount equaled or exceeded 100 times the bulk amount and was within 1,000 feet of a school.

Count 2:    "Possession of Drugs/Major Drug Offender." The jury found the amount equaled or exceeded 100 times the bulk amount.

Count 3:    "Trafficking in Drugs/Heroin/Within the Vicinity of a School." The jury found the amount was equal to or greater than one gram but less than five (5) grams, and was within 1,000 feet of a school.

Count 4:    "Possession of Drugs/Heroin." The jury found the amount equaled or exceeded one gram, but was less than five grams.

Count 7:    "Trafficking in Drugs/Marijuana/Within the Vicinity of a School." The jury found the amount was less than 200 grams and was within 1,000 feet of a school.

Count 8:    "Possession of Criminal Tools." There were no findings associated with this count.

Count 9:      "Possession of Marijuana."  The jury found the amount was less

than the bulk amount.

Count 10:    "Conspiracy to Traffic in Drugs, F2."

**{¶17}** The trial court sentenced Appellant to 27 years in prison.  Appellant

now brings his timely appeal, setting forth the following assignments of error.

ASSIGNMENTS OF ERROR

I.      "Trial counsel provided ineffective assistance of counsel by failing to

specifically object to the jury pool and request that the court order the

jury list to be supplemented with the names of licensed drivers, along

with registered voters."

II.     "The trial court erred by failing to sua sponte order the Jury

Commissioner to supplement the jury list with the names [of] licensed

drivers."

III.    "The trial court erred in failing to suppress evidence obtained as the

result of an unconstitutional search and seizure."

IV.     "The trial court violated [Appellant's] rights to due process and a fair

trial when, in the absence of sufficient evidence, [Appellant] was

found guilty of possession of drugs, possession of criminal tools, and

conspiracy to traffic drugs."

{¶18} In his supplemental brief, Appellant also argued the verdict forms were deficient because they failed to list the degree of the offense or the statutory section of the offense, and one count failed to list the controlled substance involved. Further, Appellant argued that the trial court erred in finding him guilty and sentencing him on counts 1,2,3,4,7, and 10, claiming that the verdicts on those counts were not supported by sufficient evidence to establish his guilt beyond a reasonable doubt.

LEGAL ANALYSIS

{¶19} After reviewing the record, we have noted an initial threshold matter that must be addressed related to the trial court's characterization of Appellant's sentence imposed as a result of his major drug offender specification. As will be more fully discussed, infra, when sentencing Appellant, the trial court incorrectly stated that this portion of Appellant's sentence was mandatory, when it was not. As such, we have decided to sua sponte invoke the "plain error" rule. Crim.R. 52(B) states that although a defendant may have failed to raise a timely objection to an error affecting a substantial right, courts may notice the error.

{¶20} For a reviewing court to find plain error: 1.) there must be an error, i.e ., "a deviation from a legal rule"; 2.) the error must be plain, i.e., "an 'obvious' defect in the trial proceedings"; and 3.) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings. *State v. Barnes*,

94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Furthermore, the Supreme Court of Ohio has admonished courts that notice of plain error under Crim.R. 52(B) is to be taken " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " Id., quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶21} When reviewing felony sentences, this Court follows the two-step approach the Supreme Court of Ohio outlined in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 4. See *State v. Welch*, 4th Dist. No. 08CA29, 2009-Ohio-2655, at ¶ 6. "First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, [that is, if the sentence complies with the law,] the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶ 4.

{¶22} Here, the jury convicted Appellant of aggravated trafficking in drugs, with additional aggravating factors that the amount of oxycodone involved was more than 100 times the bulk amount, and the crime occurred within the vicinity of a school. Aggravated trafficking in drugs is proscribed by R.C. 2925.03(C)(1). R.C. 2925.03(C)(1)(f) provided, "[i]f the amount of the drug involved equals or exceeds one hundred times the bulk amount and regardless of whether the offense

was committed in the vicinity of a school or in the vicinity of a juvenile, aggravated trafficking in drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code." The jury found the amount of the drug exceeded 100 times the bulk amount.

{¶23} Thus, Appellant was a "major drug offender" under R.C. 2925.03(C)(1)(f) and subject to a mandatory prison term of ten years for aggravated trafficking in drugs. The trial court also sentenced Appellant to an additional prison term of ten years for the major drug offender specification, stating on the record that this additional ten-year term was mandatory.

{¶24} R.C. 2929.14(D)(3)(b) provided, "[t]he court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years * * *."[1] That is, the trial court was permitted to impose an additional prison term of ten years for the major drug offender specification, but the statutory language did not make the additional prison term mandatory. Thus, it was erroneous for the trial

---

[1] R.C. 2929.14 has since been amended.

court to label the prison term for the major drug offender specification as "mandatory."

{¶25} The distinction between mandatory and nonmandatory prison terms is important when determining whether a court may grant an offender judicial release. R.C. 2929.20(A)(1)(a) provided only eligible offenders could apply for judicial release, and "'eligible offender' means any person serving a stated prison term of ten years or less * * *." As Appellant's aggregate sentence was 27 years, he was not eligible for judicial release because his aggregate sentence was greater than ten years.

{¶26} However, Revised Code Section 2929.20 has since been amended and Appellant will eventually be eligible for judicial release, even with a prison sentence of 27 years. The General Assembly amended R.C. 2929.20(A)(1)(a) to read, "Except as provided in division (A)(1)(b) of this section, 'eligible offender' means any person who, on or after April 7, 2009, is serving a stated prison term that includes one or more nonmandatory prison terms." As 17 years of Appellant's 27-year sentence are nonmandatory, Appellant is an "eligible offender." Additionally, the newly added R.C. 2929.20(C)(5) provides, "[i]f the aggregated nonmandatory prison term or terms is more than ten years, the eligible offender may file the motion not earlier than the later of the date on which the offender has

served one-half of the offender's stated prison term or the date specified in division (C)(4) of this section."

**{¶27}** Accordingly, because the trial court incorrectly stated the ten-year prison term for Appellant's major drug offender specification was mandatory, we conclude that this portion of the sentence was contrary to law and an abuse of discretion under *Kalish*, supra, and also constitutes plain error. Accordingly, we hereby reverse this portion of the sentence and remand the case for proceedings consistent with this opinion.

## ASSIGNMENTS OF ERROR I AND II

**{¶28}** As Appellant's first and second assignments of error are interrelated, we address them together. In his first assignment of error, Appellant argues he was deprived of effective assistance of counsel because his trial counsel only generally objected to the racial composition of the jury venire and instead should have specifically requested the court order the jury list be supplemented with licensed drivers. In his second assignment of error, Appellant argues the trial court erred when it did not sua sponte supplement the jury list with licensed drivers. We disagree with both arguments.

### A. Standard of Review

**{¶29}** "In order to establish ineffective assistance of counsel, an appellant must show that counsel's representation was both deficient and prejudicial." *State*

*v. Michael,* 4th Dist. No. 09CA887, 2010-Ohio-5296, at ¶ 15, citing *In re Sturm,* 4th Dist. No. 05CA35, 2006-Ohio-7101, at ¶ 77; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, (1984). "Deficient representation means counsel's performance was below an objective standard of reasonableness. To show prejudice, an appellant must show it is reasonably probable that, except for the errors of his counsel, the proceeding's outcome would have been different." (Citations omitted). *Michael* at ¶ 15. " 'Failure to satisfy either prong is fatal as the accused's burden requires proof of both elements.' " *State v. Weddington,* 4th Dist. No. 10CA19, 2011-Ohio-1017, at ¶ 12, quoting *State v. Hall,* 4th Dist. No. 07CA837, 2007-Ohio-6091, at ¶ 11, citing *State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 205.

{¶30} We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation omitted.) *State v. Hankison,* 4th Dist. No. 09CA3326, 2010-Ohio-4617, at ¶ 105, citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. " 'Moreover, the strategic decision of a trial attorney will not form the basis of a claim of ineffective assistance of counsel, even if there may have been a better strategy available.' " *Hankinson* at ¶

105, citing *State v. Komora*, 11th Dist. No. 96-G-1994, 1997 WL 184758 (Apr. 4, 1997), citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶31} R.C. 2313.08(B) permits a jury commissioner to compile the county's annual list of jurors from either the list of registered voters, or the lists of registered voters and licensed drivers. The court may order the jury commissioner to supplement the annual jury list. R.C. 2313.08(A); R.C. 2313.09. Yet supplementation of the annual jury list is discretionary, not mandatory. Moreover, "[u]tilization of voter rolls alone to choose prospective jurors is constitutional." *State v. Davie*, 80 Ohio St.3d 311, 316, 686 N.E.2d 245 (1997), citing *State v. Johnson*, 31 Ohio St.2d 106, 285 N.E.2d 751 (1972), paragraph two of the syllabus, and *State v. Hill*, 64 Ohio St.3d 313, 325-326, 595 N.E.2d 884 (1992).

### B. Legal Analysis

{¶32} Here, Appellant failed to demonstrate prejudice resulted from his counsel's failure to specifically request the trial court supplement the annual jury list with licensed drivers. The trial court's comments established Scioto County composed its annual jury list from a certified list of registered voters. This method is both constitutional and a statutorily permissible method of selecting an annual jury list. Had Appellant's counsel requested the trial court supplement the jury list with licensed drivers, the trial court had no duty to do so. Thus, Appellant is unable to establish the outcome of his trial would have been different if his counsel

had made a more specific objection to the jury venire. Accordingly, we overrule Appellant's first assignment of error.

{¶33} Similarly, because the trial court had no duty to supplement its annual jury list when it employed a constitutional and statutorily permissible method of selecting venires from registered voters, we find no error when the trial court did not sua sponte supplement its annual jury list with licensed drivers and then reselect a venire. Thus, we overrule Appellant's second assignment of error.

ASSIGNMENT OF ERROR III

A. Standard of Review

{¶34} In his third assignment of error, Appellant argues the trial court erred in overruling his motion to suppress evidence. Specifically, Appellant contends he had standing to contest the search of the residence and the probation officers lacked the reasonable suspicion necessary to enter the residence. We disagree.

{¶35} Preliminarily, "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." Crim.R. 12(F). While the trial court made no explicit factual findings when it denied Appellant's motion to suppress, "[t]he extensive record of the suppression hearing is 'sufficient to allow full review of the suppression issues.'" *State v. Sapp*, 105 Ohio St.3d 104, 822 N.E.2d 1239, 2004-Ohio-7008, at ¶96, quoting *State v. Waddy* (1992), 63 Ohio

St.3d 424, 443, 588 N.E.2d 819; citing *State v. Brewer* (1990), 48 Ohio St.3d 50, 60, 549 N.E.2d 491.

{¶36} Generally, " '[a]ppellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.' "  *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶100, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  "Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence."  *State v. Westbrook*, 4th Dist. No. 09CA3277, 2010-Ohio-2692, at ¶16, citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (2000).  "Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case."  *Westbrook* at ¶16, citing *Roberts* at ¶100, citing *Burnside* at ¶8.

## B. Legal Analysis

{¶37} After reviewing the record, we conclude that Howard did not establish he had standing to assert a Fourth Amendment violation.  "The rule followed by courts today with regard to standing is whether the defendant had an expectation of privacy * * * that society is prepared to recognize as reasonable.  The burden is

upon the defendant to prove facts sufficient to establish such an expectation."
*State v. Williams*, 73 Ohio St.3d 153, 166, 652 N.E.2d 721 (1995), citing *Rakas v. Illinois*, 439 U.S. 128, 131, 99 S.Ct. 421, 58 L.Ed.2d 387, at fn. 1 (1978) and *State v. Steele*, 2 Ohio App.3d 105, 107, 440 N.E.2d 1353 (8th Dist. 1981). See, also, *State v. Corbin*, 6th Dist. No. WD-10-013, 2011-Ohio-3491, at ¶ 24.

{¶38} Here, although Howard argued that he had standing to challenge the search of the residence and the items within it, he provided no evidence or testimony in support of his argument. Howard did not own the residence or state he lived there. Nor did Howard establish he was an overnight guest who could invoke the aegis of *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85, and claim he had an expectation of privacy within Lansing's residence. Consequently, Howard failed to establish he had standing to assert a Fourth Amendment violation and the trial court was right to deny his motion.

{¶30} Accordingly, we overrule Howard's third assignment of error.

## ASSIGNMENT OF ERROR IV

### A. Standard of Review

{¶40} In his fourth assignment of error, Appellant argues there was insufficient evidence to convict him of possession of drugs and possession of criminal tools. We disagree. Appellant also claims he was convicted of conspiracy to traffic in drugs based upon insufficient evidence. However, because

we find Appellant was not actually convicted on the conspiracy count, we reject this argument also.

{¶41} When reviewing the sufficiency of the evidence, appellate courts look to the adequacy of the evidence and whether that evidence, if believed by the trier of fact, supports a finding of guilt beyond a reasonable doubt.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).  In other words, after viewing the evidence, and each inference that can reasonably drawn therefrom, in a light most favorable to the prosecution, could any rational trier of fact have found all essential elements of the offense beyond a reasonable doubt?  *See State v. Were,* 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, at ¶ 132; *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, at ¶ 34; *State v. Jones*, 90 Ohio St.3d 403, 417, 739 N.E.2d 300 (2000).

## B.  Legal Analysis

### 1. Possession of Controlled Substances[2]

---

[2] We note the names of the offenses used in several of the verdict forms are incorrect, though this did not prejudice Appellant.  For example, Count 1 was entitled "Trafficking in Drugs/Oxycodone/Vicinity of a School/Major Drug Offender," but should have been entitled "aggravated trafficking in drugs" and specified the controlled substance involved was oxycodone.  See R.C. 2925.03(C)(1).  The offenses should have been titled "aggravated trafficking in drugs" and "aggravated possession of drugs" (for the oxycodone), "trafficking in heroin" and "possession of heroin," "trafficking in marijuana" and "possession of marihuana."  The statutory scheme of R.C. 2925.03 and 2925.11 provides for separate offenses, each with distinct aggravating factors and penalties, depending

R.C. 2925.11 provides:

(A) No person shall knowingly obtain, possess, or use a controlled

substance.

* * *

(C) Whoever violates division (A) of this section is guilty of one of

the following:

* * *

(1) If the drug involved in the violation is a compound, mixture,

preparation, or substance included in schedule I or II, with the

exception of marihuana, cocaine, L.S.D., heroin, and hashish,

whoever violates division (A) of this section is guilty of aggravated

possession of drugs. The penalty for the offense shall be determined

as follows:

* * *

(e) If the amount of the drug involved equals or exceeds one hundred

times the bulk amount, aggravated possession of drugs is a felony of

the first degree, the offender is a major drug offender, and the court

upon the controlled substance involved.  We caution against the vernacular use of the phrases "trafficking in drugs"

and "possession of drugs," as the state and the court did in this case, because these vernacular phrases are actually

specific crimes involving specific controlled substances.   See R.C. 2925.03(C)(2) and 2925.11(C)(2).   Instead,

parties should employ the specific statutory name of the offense based upon the controlled substance involved.

shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

* * *

(3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(3)(b), (c), (d), (e), (f), or (g) of this section, possession of marihuana is a minor misdemeanor.

* * *

(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:

* * *

(b) If the amount of the drug involved equals or exceeds ten unit doses but is less than fifty unit doses or equals or exceeds one gram but is less than five grams, possession of heroin is a felony of the fourth

degree, and division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

{¶42} Here, the evidence was sufficient to prove all elements of aggravated possession of drugs beyond a reasonable doubt. Timberlake testified about the various controlled substances law enforcement recovered from 518 Sixth Street. Appellant was present in the house when law enforcement recovered these.

{¶43} Megan Snyder, a forensic chemist, testified at great length about the chemical analyses she performed on each substance, identifying each substance and noting the amount of each substance. Snyder testified there were 1,824 pills that contained oxycodone (oxycodone hydrochloride). She also testified, based upon the maximum daily dosage of 90 milligrams for oxycodone and oxycodone's "bulk amount" being five times the maximum daily dosage, the pills were 121.6 times the bulk amount of oxycodone.

{¶44} Again, there were digital scales in plain view. There was $3,090 on the floor of the upstairs bedroom. In total, there was $16,803 in cash within the house, though only one of five defendants was ostensibly employed. In addition to the 1,824 oxycodone pills, there was heroin, cocaine, and marihuana recovered from the residence. Given the sheer quantity of the oxycodone recovered, and the

other evidence, it was reasonable for the jury to conclude Appellant possessed the oxycodone.

{¶45} Although the case against Appellant and his co-defendants is based entirely upon circumstantial evidence, circumstantial evidence is, by itself, a sufficient basis for a conviction. *Bostwick*, 4th Dist. No. 10CA3382, 2011-Ohio-3671, at ¶ 17, quoting *State v. Smith,* 4th Dist. No. 09CA29, 2010-Ohio-4507, at ¶ 44, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991).

{¶46} Addressing Appellant's contention that the state failed to prove possession, even constructive possession, we disagree. Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989); *State v. Fry,* 4th Dist. No. 03CA26, 2004-Ohio-5747, ¶ 39. "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession." *Fry* at ¶ 39, citing *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus, and *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

{¶47} This court has held that, "[f]or constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *State v. Harrington,* 4th Dist. No. 05CA3038, 2006-Ohio-4388, at ¶ 15, citing

*Hankerson* at 91.  Further, "two or more persons may have joint constructive possession of a particular item." *State v. Cooper,* 3d Dist. No. 9-06-49, 2007-Ohio-4937, at ¶ 25, citing *State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (8th Dist. 1993); *State v. Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952 (Sept. 13, 1999).  "[T]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion or control over it." *State v. Reed,* 2d. Dist. No. 2002-CA-30, 2003-Ohio-5413, at ¶ 19.

**{¶48}** Appellant's argument is his mere proximity to various controlled substances does not conclusively establish he possessed them.  R.C. 2925.01(K) provides, "'[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."  That is, "a defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession.  However, a defendant's proximity to drugs may constitute some evidence of constructive possession.  Mere presence in the vicinity of illegal drugs, *coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession*."  (Internal citations omitted, emphasis added.)  *Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952, at *5.

{¶49} In *State v. Harrington*, the defendant's proximity to a quantity of cocaine, coupled with his immediate denial of any wrongdoing and false statements, permitted a jury to infer the defendant knew the cocaine was there. *Harrington* at ¶ 18, 24. We found this evidence sufficient to establish the defendant knew of the cocaine and he had the ability to exercise control over it, demonstrating constructive possession. *Id.* at ¶ 24.

{¶50} In *State v. New*, 4th Dist. No. 08CA9, 2009-Ohio-2632, the state presented evidence of recorded telephone conversations between the defendant and her boyfriend that indicated she knew there were drugs in the house. During a phone call, the defendant discussed with her boyfriend specific items in the home the police had recovered, such as a coffee can with a false bottom that contained cocaine, a plate with a razor blade that had cocaine residue on it, and pictures of the defendant, her boyfriend, and a third party holding large sums of cash. *New* at ¶ 16, 17. Given the defendant's presence in the house, coupled with her statements about specific items related to controlled substances, she knew where the cocaine was kept in the residence, and a finding that she constructively possessed the cocaine was permissible. *Id.* at ¶ 18.

{¶51} Likewise, in *Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952, we found the defendant's proximity to controlled substances in the passenger compartment of a vehicle, coupled with the vast amount of controlled substances

and paraphernalia within the vehicle was sufficient to establish constructive possession. Law enforcement recovered cocaine in a bag behind the passenger's seat; a cocaine straw and a plastic container with marihuana residue beside the defendant's seat; a mirror with cocaine residue under the passenger's seat; numerous marihuana roaches and marihuana joints throughout the vehicle, many of which were in the defendant's plain view. *Id.* Thus, the defendant's proximity, coupled with the vast amount of drugs, some of which were in plain view, permitted the jury to find he knowingly possessed the drugs. *Id.*

{¶52} The present case is akin to *Riggs.* "The presence of such a vast amount of drug evidence in the [house] supports an inference that [Appellant] knew about the presence of the drugs and the he, along with his [co-defendants], exercised control over each of the items found." *Riggs*, 4th Dist. No. 98CA39, 1999 WL 727952, at *5, citing *State v. Soto*, 8th Dist. No. 57301, 1990 WL 145651 (Oct. 4, 1990). Here, there were drugs scattered throughout the entire house: 1,824 oxycodone pills, over 100 grams of marihuana, heroin, cocaine, and traces of codeine and morphine. There were digital scales in plain view in the kitchen. There was over $16,000 cash in a house where four of the five occupants were unemployed. Considering all of this evidence together, the jury could properly infer Appellant knew there were controlled substances in the house and he was capable of exercising dominion or control over them, establishing his

constructive possession of the controlled substances. Thus, there was sufficient evidence to show Appellant knowingly possessed the various controlled substances.

{¶53} Having reviewed the evidence and each inference that can reasonably be drawn therefrom, in a light most favorable to the prosecution, we find the jury could have found all essential elements of the possession of controlled substances offenses were present beyond a reasonable doubt. Therefore, Appellant's convictions for possession of the various controlled substances were supported by sufficient evidence and we affirm Appellant's convictions for aggravated possession of drugs, possession of marihuana, and possession of heroin.

2. Possessing Criminal Tools

{¶54} R.C. 2923.24(A) provides, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Whoever violates that section is guilty of possessing criminal tools. R.C. 2923.24(C).

{¶55} As with Appellant's convictions for possession of controlled substances, there was substantial evidence upon which a jury could find Appellant possessed the digital scales found in the kitchen. The fact that the scales had residue from marihuana, heroin, codeine, and morphine on them, coupled with the vast amount of drugs recovered from the house, permitted the jury to infer

Appellant had a purpose to use the scales criminally: to traffic the controlled substances.  Thus, we affirm Appellant's conviction for possessing criminal tools.

### 3. Conspiracy to Traffic in Drugs

R.C. 2923.01 provides:

(A) No person, with purpose to commit or to promote or facilitate the commission of * * * a felony drug trafficking, manufacturing, processing, or possession offense * * * shall do either of the following:

(1) With another person or persons, plan or aid in planning the commission of any of the specified offenses;

(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses.

* * *

(M) As used in this section:

(1) 'Felony drug trafficking, manufacturing, processing, or possession offense' means any of the following that is a felony:

(a) A violation of section 2925.03 * * * of the Revised Code;

(b) A violation of section 2925.11 of the Revised Code that is not a minor drug possession offense.

{¶56} Yet, R.C. 2923.01(G) provides, "When a person is convicted of committing * * * [a] specific offense, the person shall not be convicted of conspiracy involving the same offense." As such, because Appellant was convicted on the principle trafficking offense, he could not be convicted of conspiracy involving the same offense. Contrary to Appellant's argument that he was convicted of conspiracy to traffic in drugs, based upon the following, we conclude that Appellant was not actually convicted on the conspiracy count.

{¶57} Here, the record reflects that although the jury did return a finding of guilt as to the conspiracy to traffic in drugs count, count 10, the trial court "ordered that count 10 merge with Count 1 and Count 2." Thus, despite the jury's finding Appellant guilty on count 10, the trial court did not impose a sentence for count 10. "A conviction consists of a finding of guilt and a sentence." *State v. Fields*, 1st Dist. No. C-090648, 2010-Ohio-4114, ¶ 7, citing *State v. Henderson*, 58 Ohio St.2d 171, 177-179, 389 N.E.2d 494 (1979); *State v. Obstaint*, 1st Dist. No. C-060629, 2007-Ohio-2661, ¶ 24; accord *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12. As such, although the jury found Appellant guilty of count 10, the trial court did not impose a sentence for count 10 and as a result, Appellant was not convicted of count 10. Therefore, there is no conspiracy conviction to vacate.

{¶58} Accordingly, we overrule Appellant's fourth assignment of error.

## ASSIGNMENT OF ERROR V

### A. Standard of Review

{¶59} In his first supplemental assignment of error, Appellant argues there are errors with the verdict forms. We agree, in part.

R.C. 2945.75 provides:

(A) When the presence of one or more additional elements makes an offense one of more serious degree:

* * *

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present.  Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶60} The Supreme Court of Ohio has adopted a plain reading of this statute.  See *State v. Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, at ¶ 14.  Moreover, "[a]lthough [an appellant] failed to object to the verdict forms in the trial court, we have previously noted that a defendant's failure to 'raise the inadequacy of the verdict form' does not forfeit this argument on appeal." *New*, 4th Dist. No. 08CA9, 2009-Ohio-2632, at ¶ 24, citing *State v. Huckleberry,* 4th Dist. No. 07CA3142, 2008-Ohio-1007, ¶ 18, citing *Pelfrey* at ¶ 14.

## B. Legal Analysis

{¶61} Here, none of the counts listed the degree of the offense, except for Count 10, Conspiracy to Traffic in Drugs. While the majority of the counts did not list the degree of the offense, they did contain specific findings regarding aggravating factors. Thus, those counts comply with R.C. 2945.75(A)(2) and *Pelfrey* and we affirm the trial court's judgment as it pertains to Count 1, Count 3, Count 4, and Count 7.

{¶62} Regarding the remaining counts, Count 2 did not specify the controlled substance involved; Count 8, and Count 9 did not contain the degree of the offense or proper findings regarding aggravating factors. Accordingly, we must sustain Appellant's assignment of error on these counts and remand the case to the trial court to reduce the degree of those offenses.

{¶63} However, as will be explained in more detail, infra, because counts 2 and 9 were merged with counts 1 and 7, respectively, we conclude Appellant was not actually convicted on these counts. As such, there are no convictions on counts 2 and 9 to vacate. Thus, any error related to the verdict forms for counts 2 and 9 is harmless. Nevertheless, as set forth above, on remand, the trial court is instructed to reduce the degree of offense on counts 2 and 9.

### 1. Count 2: Possession of Drugs

**{¶64}** "[T]his Court has ruled that when a jury verdict fails to specify the drug involved, the convictions must be treated as being associated with the least serious drug for possession/trafficking (usually marijuana)." *State v. Jones*, 4th Dist. No. 09CA1, 2010-Ohio-865, at fn. 3, citing *New*, 4th Dist. No. 08CA9, 2009-Ohio-2632, at ¶ 26, fn. 3; *Huckleberry* at ¶ 24.

**{¶65}** As the verdict form for Count 2 fails to specify the drug possessed, we must treat it as a finding of guilt regarding possession of the least serious drug, marihuana. Since there is no "bulk amount" for marihuana, the finding of that additional element of "Equal [sic] or exceeds one hundred (100) times bulk amount" is meaningless. See R.C. 2925.01(D)(1) (excluding marihuana from the definition of "bulk amount"); R.C. 2925.11(C)(3) (delineating the penalties for possession of marihuana and enhancing the degree of the offense based upon gram weight, not bulk amount).

**{¶66}** Consequently, the jury found Appellant guilty of possession of marihuana, which is a minor misdemeanor, not a first degree felony. R.C. 2925.11(C)(3)(a). As such, we sustain Appellant's assignment of error in this regard. However, as indicated above, because count 2 was merged with count 1, Appellant was not sentenced on count 2. "A conviction consists of a finding of guilt and a sentence." *State v. Fields*, 1st Dist. No. C-090648, 2010-Ohio-4114, ¶

7, citing *State v. Henderson*, 58 Ohio St.2d 171, 177-179, 389 N.E.2d 494 (1979); *State v. Obstaint*, 1st Dist. No. C-060629, 2007-Ohio-2661, ¶ 24; accord *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12.  Because Appellant was not sentenced on count 2, there is no conviction on count 2 to vacate.  Thus, any error related to the verdict form is harmless.  Nevertheless, because this matter is already being remanded on several other issues, the trial court is instructed to reduce the degree of offense on count 2 consistent with this opinion.

### 2. Count 8: Possessing Criminal Tools

**{¶67}** R.C. 2923.24(A) provides, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."  Whoever violates that section is guilty of possessing criminal tools. R.C. 2923.24(C).  Possessing criminal tools is a misdemeanor of the first degree unless the circumstances indicate the item involved was intended for use in the commission of a felony; then possessing criminal tools is a felony of the fifth degree.  *Id*.

**{¶68}** Here, the jury made no finding of the aggravating factor that the scales, the criminal tools, were intended for use in the commission of a felony. Thus, the verdict form was devoid of the level of the offense findings or aggravating factors and constitutes a finding of guilt of the least degree of the

offense charged: a first degree misdemeanor. We sustain Appellant's assignment of error in this regard and vacate his conviction for Count 8.

### 3. Count 9: Possession of Marihuana

{¶69} The verdict form for Count 9 stated the jury had found Appellant guilty of "Count 9 Possession of Marijuana," and made the specific finding of "Less than bulk amount." There is, however, no bulk amount for marihuana. See R.C. 2925.01(D)(1) (excluding marihuana from the definition of "bulk amount"). Further, when determining the appropriate penalty for possession of marihuana, R.C. 2925.11(C)(3) refers to the gram weight of the substance involved, not a bulk amount. Thus, the jury's finding that Appellant was guilty of possession of marihuana constitutes a finding of the least degree of the offense; a minor misdemeanor. As such, we sustain Appellant's assignment of error in this regard. However, as we concluded in our analysis of count 2, because count 9 was merged with 7, Appellant was not sentenced on count 9 and thus, there is no conviction to vacate. *Obstaint*, supra, at ¶ 24.

{¶70} Accordingly, we remand the case to the trial court to 1) impose a conviction for the correct level of the offense as to count 8; 2) to reduce the degree of offenses as to counts 2 and 9, which were merged with counts 1 and 7 for purposes of sentencing: and 3) to sentence Appellant accordingly.

### ASSIGNMENT OF ERROR VI

{¶71} In his second supplemental assignment of error, Appellant argues that the trial court erred in finding him guilty as to counts 1, 2, 3, 4, 7, and 10. However, we have already discussed the trial court's handling of these convictions in great detail above. Specifically, under assignment of error five, which was Appellant's first supplemental assignment of error, we addressed the verdict forms related to counts 1, 3, 4, and 7. Although we found these counts did not list the degree of offense, because they did contain specific findings regarding aggravating factors, we concluded that they satisfied R.C. 2945.75(A)(2) and *Pelfrey*, supra, and therefore affirmed these convictions. Further, we vacated Appellant's conviction for count 8. Finally, we concluded that because Appellant was not actually convicted of counts 2, 9, and 10, there were no convictions to vacate. Nevertheless, we remanded the matter with respect to counts 2 and 9, in order for the trial court to reduce the degree of these offenses.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, CAUSE REMANDED**.

Kline, J., dissenting, in part.

{¶72} I concur in judgment only with the following exceptions. First, I would not vacate Count 8. Here, the trial court instructed the jury as follows: "Before you can find the individual Defendant[] * * * guilty, you must find beyond a reasonable doubt that * * * the individual Defendant * * * had under his control a

device or instrument, to wit, digital scales, with *purpose to use it criminally for the commission of a felony.*" (Emphasis added.)  Transcript at 923.  Therefore, based on the presumption that the jury followed the trial court's instruction, I would not recognize plain error as to Count 8.  *See State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶¶ 11, 17.  Furthermore, I believe that Counts 2 and 9 are moot.  Therefore, I would not address these counts.

{¶73} Accordingly, I respectfully dissent as to Counts 2, 8, and 9.  I respectfully concur in judgment only with the rest of the opinion.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE JUDGMENT AFFIRMED IN PART, REVERSED IN PART, & CAUSE REMANDED and that the Appellee and Appellant split costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J.: Concurs in Judgment and Opinion.
Kline, J.: Dissents in Part with Opinion as to A/E's 2, 8, & 9 and with the remainder of Opinion Concurs in Judgment Only.

                              For the Court,


                    BY:    _____
                           Matthew W. McFarland, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**